

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| JOHN MARSHALL, | ) | No. ED105948 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court of the |
| | ) | City of St. Louis |
| vs. | ) | Cause No. 1622-CC00011 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Rex M. Burlison |
| | ) | |
| Respondent. | ) | Filed: February 13, 2019 |

## OPINION

John Marshall ("Movant") appeals the motion court's judgment denying his Rule 29.15 motion for post-conviction relief ("PCR") claiming that his trial counsel rendered ineffective assistance of counsel.[1] Movant raises four points on appeal. Specifically, Movant alleges that the motion court clearly erred in denying his PCR motion after an evidentiary hearing because he proved by a preponderance of the evidence that his trial counsel was ineffective for failing to: object during the prosecutor's cross-examination of Movant's only witness (Point I); object during the prosecutor's opening statement (Point II); present Movant's medical records and evidence of his physical disability (Point III); and impeach Movant's wife ("Victim") with her

---

[1] All references to Rules are to Missouri Supreme Court Rules (2016).

1

prior inconsistent testimony (Point IV). Finding that the motion court did not clearly err in denying Movant's Rule 29.15 motion, we affirm the judgment of the motion court.

## I. Factual and Procedural Background

Movant was charged with kidnapping, domestic assault in the second degree, and tampering with a witness. Trial was held before the Circuit Court of the City of St. Louis on August 4, 2014.

Trial

During her opening statement, the prosecutor outlined to the jury what the State's evidence would show to support the charged offenses. Specifically, the prosecutor made statements about Movant's drug use. The prosecutor stated that Movant and Victim's "marriage had been having problems for some time. The two of them off and on used drugs and [Victim] knew that it was time for her to get out." She also mentioned that, on the evening of February 18, 2011, Movant came to Victim's apartment and that:

> [A]s the night progressed [Movant] began smoking crack, and as he got higher[,] he got angry.… Finally, [Movant] grabbed [Victim] by the neck, slammed her into the wall, and began choking her.… [Movant] had been sitting at the kitchen table smoking crack while [Victim] and her daughters were in the living room.

Trial counsel did not object to the prosecutor's statements.

Victim testified as a witness for the State and described the events that led up to the charged crimes. Victim testified that she and Movant were married, but their marriage began to deteriorate after Victim became a witness in a case against Movant in October of 2010. Consequently, Victim and her daughters moved to a separate apartment unit in the same apartment building as Movant. On the evening of February 18, 2011, Movant came to Victim's apartment to inquire about a letter he believed Victim was hiding from him. Victim explained that she had no knowledge of the letter and an argument between the parties ensued. As the

2

evening progressed, Movant became angry and began yelling at Victim. In an attempt to stop the argument, Victim raised her voice back at Movant in response and Movant grabbed Victim by her hair, causing her to fall from the couch onto the floor. He then grabbed Victim by the neck, held her up against the patio door, and choked her. At one point, Movant grabbed a pair of pliers and hit Victim on the top of her head. Victim attempted to leave the apartment several times, but Movant would block the door, stating "you're not going nowhere." Victim stopped attempting to escape the apartment due to her fear that Movant would hit her again. Victim could not call for help since Movant had taken her cellphone away and removed the battery. Movant eventually fell asleep and Victim was able to retrieve her cellphone and its battery. In order to avoid waking up Movant, Victim texted her sister to call the police. Victim further testified that when police arrived to her apartment the following morning, Movant ran out the back door.[2]

During Victim's cross-examination, Victim was questioned about whether she knew if Movant was disabled. Victim stated, "I know he gets a check for disability…. In my opinion I wouldn't say he was disabled.…" On redirect examination, Victim testified that she was not aware of any physical condition that would have prevented Movant from grabbing her and choking her. During recross-examination, trial counsel attacked Victim's credibility. Victim admitted to defrauding the government and the health care agency to which she applied to become Movant's health care aide by accepting payment for nursing services she never provided. Victim also admitted that she had lied under oath at trial.

Detective Williams of the City of St. Louis police department's Domestic Abuse Response team responded to the call to Victim's apartment. Detective Williams testified that Victim was crying and visibly shaken as she described the events that had taken place. She added

---

[2] Movant was later found and arrested at his mother's home.

that she did not observe any injuries on Victim, but in her experience that was not unusual in instances of domestic assault. She explained that there are several factors that may contribute to the lack of marks on a victim, such as the amount of pressure applied, the use or non-use of fingernails, and the victim's skin tone. Detective Williams also testified that Victim had declined medical attention, but that this was not unusual with victims of domestic assault because of the cost associated with medical care.

Movant's mother, Bettye Marshall ("Ms. Marshall"), testified in Movant's defense. Ms. Marshall testified that Movant was at her home the evening of February 18th and the following morning; she affirmed that she did not see Movant leave the house during that time frame. During Ms. Marshall's cross-examination, the prosecutor questioned her about whether she had informed the authorities or prosecutor regarding her knowledge of Movant's whereabouts on the dates in question. Ms. Marshall testified that she had told the officers who arrested Movant at her home that Movant had been there on February 18th and 19th. When asked if she talked with a prosecutor about Movant's case, she stated that "[n]o one asked [her] to come" talk with a prosecutor, but she did speak to Movant's public defender. Movant's trial counsel did not object to this line of questioning.

The jury found Movant guilty of kidnapping and domestic assault in the second degree, but acquitted him on the witness tampering charge. Movant was sentenced to terms of ten years' imprisonment for kidnapping and seven years' imprisonment for second-degree domestic assault; the sentences were to run concurrently with each other. Our Court affirmed the conviction and sentences on direct appeal in *State v. Marshall*, 476 S.W.3d 307 (Mo. App. E.D. 2015), issuing our mandate on December 18, 2015.

Post-Conviction Proceedings

Movant timely filed his *pro se* Rule 29.15 motion on January 4, 2016. Counsel from the Public Defender's Office entered an appearance on January 25, 2016. Counsel was granted an additional thirty days to file an amended Rule 29.15 motion. On March 17, 2016, Movant's post-conviction counsel timely filed an amended motion and a request for an evidentiary hearing. The amended motion alleged that trial counsel was ineffective for failing to: (1) object and request a mistrial when the State asked Ms. Marshall on cross-examination about why she did not call the police or volunteer exculpatory evidence to the prosecutor's office; (2) object to the prosecutor's references to uncharged crimes during opening statement; (3) request records regarding Movant's disability; and (4) impeach Victim with her previous trial testimony concerning Movant's disability.

The motion court granted Movant's request for an evidentiary hearing on his amended motion. A partial hearing was held on December 15, 2016, and was completed on March 30, 2017. At the evidentiary hearing, trial counsel acknowledged that, although she did not remember specifics about the trial, she knew the facts and circumstances very well at the time of the trial and felt fully prepared to try the case and defend Movant.

When questioned regarding her failure to make objections during the prosecutor's opening statement and cross-examination of Ms. Marshall, trial counsel testified that she did not recall her specific trial strategy for not objecting.[3] Regarding the opening statement, trial counsel testified it was possible she did not object because she did not want to call the jury's attention to the specific statement and believed that the reference of the uncharged crime was to the actual

---

[3] Trial counsel also testified that it was possible that she missed the opportunity to object because she could have been distracted by Movant whispering in her ear or because she was paying attention to witnesses and taking notes.

facts of the incident as alleged by the Victim. As to the cross-examination of Ms. Marshall, trial counsel testified that it was possible that she did not object because Ms. Marshall was not a suspect or party to the case, therefore she did not have the same right to remain silent (about Movant's whereabouts).

As to Movant's medical records, trial counsel testified that Movant had agreed to proceed with an alibi defense, therefore she did not believe his medical records would be necessary or relevant to that defense. At trial, Ms. Marshall was called as an alibi witness to support the defense that Movant was at her house at the time of the charged offenses. Because of the chosen defense theory, trial counsel affirmed that any focus on collateral matters could have detracted from the alibi defense. Movant did not produce his medical records at the evidentiary hearing.

Lastly, regarding the impeachment of Victim, trial counsel stated that, even though she did not impeach Victim on the basis of how long she worked as Movant's health care aide and her knowledge of Movant's medical disability, she "attacked [Victim's] credibility in other ways." Trial counsel stated that she believed the points by which she attacked Victim's credibility were stronger since Victim ultimately admitted that she had committed fraud and lied under oath. Additionally, trial counsel testified that presenting evidence of Movant's medical disability could have detracted from the alibi defense.

On August 16, 2017, the motion court issued its findings of fact, conclusions of law, and judgment denying Movant's amended motion. The motion court held that trial counsel was not ineffective for failing to: (1) object to the prosecutor's questioning of Ms. Marshall because there was no legal basis for an objection, and even if there was, there was no prejudice; (2) obtain and present Movant's medical records showing he had a medical disability because Movant "did not produce these records at the evidentiary hearing and conceded that he had not met his burden of

6

proof with respect to this allegation"; (3) object to the prosecutor's reference during opening statement to Movant's uncharged crime because the objection would have been unmeritorious and there was overwhelming evidence of Movant's guilt so that there was no prejudice; and (4) impeach Victim because trial counsel "extensively cross-examined Victim and impeached her with regard to other matters reflecting on her credibility."

This appeals follows.

## II.      Standard of Review

Appellate review of a motion court's Rule 29.15 judgment "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Price v. State,* 422 S.W.3d 292, 294 (Mo. banc 2014); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). If a motion court's judgment on a Rule 29.15 motion is sustainable on any ground, then a reviewing court must uphold it. *McGuire v. State*, 523 S.W.3d 556, 563 (Mo. App. E.D. 2017).

## III.      Discussion

Movant offers four points on appeal, arguing in each that the motion court clearly erred in denying his amended Rule 29.15 motion because he proved by a preponderance of the evidence that his trial counsel was ineffective in multiple ways. Because all four points rest on whether counsel provided ineffective assistance of counsel, we apply the test from *Strickland v. Washington,* 466 U.S. 668 (1984) to each point. To establish ineffective assistance of counsel under *Strickland,* a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Hopkins v.*

7

*State*, 519 S.W.3d 433, 436 (Mo. banc 2017); *Strickland*, 466 U.S. at 687. If a movant fails to establish either the performance or the prejudice prong, "then we need not consider the other and the claim of ineffective assistance must fail." *Roberts v. State*, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).

To satisfy the first prong, a movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective by showing "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *McGuire,* 523 S.W.3d at 563 (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)).

To satisfy the prejudice prong of the *Strickland* test, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006); *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Point I

In Movant's first point, he argues that the motion court clearly erred in denying his PCR motion because he showed by a preponderance of the evidence that his trial counsel was ineffective for failing to object during the prosecutor's cross-examination of Ms. Marshall when the prosecutor asked why she did not volunteer exculpatory evidence to the prosecutor's office or police.

To prevail on a claim of ineffective assistance of counsel for failure to object, a movant must show that counsel's objection would have been meritorious and the failure to object resulted in a substantial deprivation of his right to a fair trial. *Shelton v. State*, 440 S.W.3d 464,

8

470 (Mo. App. E.D. 2014). In a claim of ineffective assistance, a trial counsel's failure to object is ordinarily considered trial strategy, and is therefore afforded considerable deference. *Nigro v. State*, 467 S.W.3d 881, 886 (Mo. App. W.D. 2015).

In the present case, Movant has failed to show by a preponderance of the evidence that trial counsel was ineffective for failing to object to prosecutor's cross-examination of Ms. Marshall. At trial, Movant's alibi defense was established by Ms. Marshall's testimony. During Ms. Marshall's cross-examination, the following questioning occurred:

> [Prosecutor]: Let me ask you this. Shortly after February 19, 2011, you were aware that your son had been charged with this case, is that correct?
> [Ms. Marshall]: Yes.
> [Prosecutor]: Did you ever talk to the police?
> [Ms. Marshall]: No.
> [Prosecutor]: Never told any police officers that your son was with you?
> [Ms. Marshall]: Oh, yes, I did. I'm sorry. The night that they came to arrest him.
> [Prosecutor]: Who was that?
> [Ms. Marshall]: They arrested him at my home.
> [Prosecutor]: Who was that that you spoke to?
> [Ms. Marshall]: The police.
> [Prosecutor]: I understand. Who was it?
> [Ms. Marshall]: I have no idea. I don't remember their names.
> [Prosecutor]: Okay. You never came down to the prosecutor's office to talk to a lawyer or talk to a prosecutor about your son's case?
> [Ms. Marshall]: About John? Yes, the first one. The first public defender I did.…
> [Prosecutor]: You've talked to a defense attorney?
> [Ms. Marshall]: Yes.
> [Prosecutor]: But you never came down and talked to the prosecutor?
> [Ms. Marshall]: No one asked me to come.
> [Prosecutor]: You never contacted anyone to say, hey, this is not right. My son wasn't there.
> [Ms. Marshall]: No, I hired a lawyer.

Movant argues that the motion court's conclusion that there was no basis for an objection was clearly erroneous because Ms. Marshall had no duty to talk to the police or the prosecutor regarding Movant's alibi. Movant further contends that the prosecutor's cross-examination led the jury to believe that Ms. Marshall made her story up based on her failure to promptly notify

9

the police and prosecutor about Movant's alibi. However, the prosecutor was allowed to test Ms. Marshall's credibility during cross-examination. *See Black v. State*, 151 S.W.3d 49, 57 (Mo. banc 2004). Thus, any objection made during the prosecutor's cross-examination of Ms. Marshall would have lacked merit. Trial counsel is not ineffective for failing to make non-meritorious objections. *Zink*, 278 S.W.3d at 188.

Missouri courts have considered this line of questioning during cross-examination as proper. "The [t]rial court is vested with broad discretion in determining the permissible scope of cross-examination on issues that may be pertinent to a witness's credibility." *State v. Curry*, 364 S.W.3d 756, 758 (Mo. App. E.D. 2012). During cross-examination, a witness may be asked questions which tend to test her accuracy, veracity, or credibility. *Black*, 151 S.W.3d at 57. In *State v. Kirk*, 636 S.W.2d 952, 955 (Mo. banc 1982), the defendant's sister served as a defense witness and provided him with an alibi for a robbery. During cross-examination, the defendant's sister was asked why she had not notified the prosecutor or police about the alibi. *Id*. The witness in *Kirk* testified that the alibi had been disclosed to the defendant's attorney. *Id*. The Supreme Court of Missouri held that, "[t]he prosecution made no improper attempt to discredit this response," and that "there was no manifest prejudice in these inquiries." *Id.*; *see also State v. Thurmond*, 693 S.W.2d 909, 912–913 (Mo. App. W.D. 1985). Here, similar to *Kirk,* Ms. Marshall was questioned as to why she did not inform the prosecution and police regarding Movant's alibi. Ms. Marshall confirmed that she had in fact disclosed the information to the arresting officers and Movant's public defender, but had not been contacted by a prosecutor regarding Movant's alibi. Like in *Kirk,* this line of cross-examination engaged in by the prosecutor was proper; thus, any objection at trial would have lacked merit.

10

Further, Movant argues that trial counsel's failure to object was not based on a trial strategy because she could not recall a specific trial strategy for not objecting to this line of questioning. Unless a movant shows otherwise, the decision not to object is presumptively trial strategy and will not support an ineffective assistance of counsel claim. *Barnes v. State*, 334 S.W.3d 717, 723 (Mo. App. E.D. 2011). Movant has failed to overcome the presumption that trial counsel was not acting pursuant to a proper trial strategy. Additionally, trial counsel's inability to specifically recall or verbalize her reason for not objecting during cross-examination does not overcome the presumption that the decision was based upon trial strategy. *Hays v. State*, 484 S.W.3d 121, 128 (Mo. App. W.D. 2015). Because Movant has failed to show that his trial counsel's performance was deficient, we need not analyze the prejudice prong. *See Roberts*, 535 S.W.3d at 797. Therefore, we find that Movant has failed to demonstrate by a preponderance of the evidence that his trial counsel was ineffective for failing to object during the prosecutor's cross-examination of Ms. Marshall.

Point I is denied.

Point II

In his second point, Movant argues that the motion court clearly erred in denying his Rule 29.15 motion because he showed by a preponderance of the evidence that his trial counsel was ineffective for failing to object during the prosecutor's opening statement.

To prevail on an ineffective assistance claim based on trial counsel's failure to object to the prosecutor's opening statement, a movant must show the failure to object was not strategic, and that the failure to object was prejudicial; unless the movant proves otherwise, the reviewing court presumes the lack of objection was sound trial strategy. *Kohlheim v. State*, 482 S.W.3d 851, 858 (Mo. App. E.D. 2016).

11

Movant contends that counsel was ineffective for failing to object when the prosecutor mentioned to the jury that Movant committed drug crimes unrelated to the charged offenses. During her opening statement, the prosecutor made the following drug references:

> Their marriage had been having problems for some time. The two of them off and on used drugs and [Victim] knew that it was time for her to get out….
> You'll hear that as the night progressed [Movant] began smoking crack, and as he got higher he got angry. And he continued talking to her about this letter. He kept insisting you know where it is. You're hiding it [from] me on purpose. You need to give it to me. She kept telling him I don't know. I don't know where it is. I can't give you what I don't have.
> Finally, [Movant] grabbed [Victim] by the neck, slammed her into the wall, and began choking her. You'll hear that this was a very small one-bedroom apartment. The kitchen and the living room were right next to each other. [Movant] had been sitting at the kitchen table smoking crack while [Victim] and her daughters were in the living room.

Movant claims that trial counsel's failure to object to the prosecutor's opening statements was not reasonable trial strategy. At the evidentiary hearing, trial counsel testified that she could not specifically state her trial strategy for not objecting to the prosecutor's opening statement. However, a trial counsel's inability to specifically recall why she did not object does not overcome the presumption that a trial-strategy reason existed for that decision. *See Dawson v. State*, 315 S.W.3d 726, 734 (Mo. App. W.D. 2010) (stating that counsel's "lack of recollection alone does not overcome the presumption that her decision not to object was a reasonable trial strategy"). Trial counsel did affirm that it was possible that she did not object to the prosecutor's drug reference because she did not want to call the jury's attention to Movant's drug usage. It is well recognized that even seasoned trial attorneys will oftentimes not object to otherwise improper questions or arguments because "it is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014) (quoting *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996)). "Merely because a trial counsel failed to object to everything objectionable, does not

12

equate to incompetence" or ineffective assistance of counsel. *Greer v. State*, 406 S.W.3d 100, 105 (Mo. App. E.D. 2013). Therefore, Movant has failed to demonstrate that trial counsel's failure to object was unreasonable trial strategy.

Moreover, Movant has failed to prove that he was prejudiced by showing that, if trial counsel had objected to the prosecutor's comment, the objection would have been meritorious and he would not have been convicted. Movant argues that he was prejudiced by trial counsel's failure to object to the prosecutor's opening statements because "[i]t allowed the jury to view Movant as, and convict him for being, a bad man rather than evaluating the evidence that they heard." Generally, proof of separate and distinct crimes committed by a movant are inadmissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *State v. Naylor*, 510 S.W.3d 855, 862 (Mo. banc 2017). However, the Supreme Court of Missouri has held that "evidence of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired." *Id.* at 863. In the present case, Movant's action of using drugs was not singled out, but rather referenced as the prosecutor presented a complete picture of the events that took place leading up to Movant's assault of Victim on February 18th; the prosecutor provided a description of the argument that ensued between the parties, the set-up of the apartment, who was present at the apartment that evening, Movant's actions as the evening progressed, and Movant's physical abuse of Victim. "The State has latitude to furnish this kind of complete picture to the jury." *State v. Watson*, 391 S.W.3d 18, 21 (Mo. App. E.D. 2012).

13

Movant relies on several Missouri cases in which the reviewing court found that a movant was prejudiced by admissions of evidence of uncharged crimes.[4] We find that Movant's reliance on those cases is misplaced; the present case concerns admitted evidence of an uncharged crime for the limited purpose of presenting a complete picture to the jury. The record indicates that the drug references were made during the prosecutor's opening statement and no evidence or testimony regarding Movant's drug use was introduced at trial. The purpose of an opening statement is to describe to the jury the evidence that the party plans to introduce; no error will be found when a prosecutor makes references to arguably admissible evidence during an opening statement and the reference is made in good faith with a reasonable expectation that the evidence will be produced, even if that evidence is later excluded. *State v. Alexander*, 505 S.W.3d 384, 391 (Mo. App. E.D. 2016). Here, the prosecutor did not make impermissible references to Movant's drug use because the opening statement provided a background as to Movant and Victim's relationship and a chronological order of the events that occurred on the evening of February 18th. The prosecutor had a good faith belief that the evidence would be admissible because the evidence was that Movant came to Victim's apartment, an argument ensued, and, as Movant smoked crack, he got angrier and angrier, ultimately keeping Victim confined in the apartment and assaulting Victim. The drug references, as the motion court found, were admitted to provide a complete picture of the events that transpired.

---

[4] *See State v. Watson*, 968 S.W.2d 249 (Mo. App. S.D. 1998) (holding that the admission of evidence of the uncharged offense was not harmless error because the State and its witnesses repeatedly referenced Movant's uncharged misconduct and there was nothing in the record to indicate that the jury disregarded this information or could not have been influenced by it); *State v. Henderson*, 105 S.W.3d 491 (Mo. App. W.D. 2003) (holding that the admission of evidence regarding the uncharged offense prejudiced the trial's outcome, as the evidence of guilt was not overwhelming and the State and its witnesses referenced the uncharged crime to the degree that it could not have escaped the jury's notice); *State v. Driscoll*, 55 S.W.3d 350 (Mo. banc 2001) (holding that evidence that defendant was part of a white racist prison gang was prejudicial because it was not logically or legally relevant to establish guilt of the crime charged (capital murder) and the prejudicial effect far outweighed its probative value).

Since Movant does not provide any evidence to support that the objection would have been meritorious and only speculates that the outcome would be different, he has not overcome his burden. *See Williams v. State*, 168 S.W.3d 433, 442 (Mo. banc 2005) (holding that post-conviction allegations containing "speculative conclusions" of prejudice are insufficient to even warrant an evidentiary hearing); *Allen v. State*, 233 S.W.3d 779, 786 (Mo. App. E.D. 2007); *Nunley v. State*, 56 S.W.3d 468, 469 (Mo. App. S.D. 2001) ("Conclusionary speculations in motion for post-conviction relief are not substantive evidence that trial counsel was ineffective.").

Additionally, "[g]iven the other evidence against [Movant] that was presented at trial, it cannot be established that th[ese] comment[s] had a decisive effect on the jury's determination." *State v. Collins*, 150 S.W.3d 340, 354–355 (Mo. App. S.D. 2004). Movant cannot satisfy the prejudice prong when the record contains overwhelming evidence of guilt. *See Taylor v. State*, 382 S.W.3d 78, 81−82 (Mo. banc 2012). Movant contends that the jury convicted him based on the prosecutor's drug references. However, the record contains overwhelming evidence, including testimony from the Victim and police, to support the charged offenses.

Thus, we find that Movant has failed to prove by a preponderance of the evidence that his trial counsel was ineffective for failing to object to the prosecutor's references to uncharged drug offenses during his opening statement.

Point II is denied.

Point III

In Movant's third point, he argues that the motion court clearly erred in denying his PCR motion because he proved by a preponderance of the evidence that trial counsel was ineffective for failing to present medical records and other evidence of Movant's disability. Movant

specifically contends that, at the time of the events forming the factual basis for the charges against him, Movant was disabled and under his doctor's orders not to lift more than five pounds. Movant argues that, because of the physicality required to commit the crimes charged, this would have been evidence of actual innocence. Movant's argument lacks merit for two reasons.

First, trial counsel is vested with wide latitude in defending her client and should use her best judgment in matters regarding trial strategy; only in exceptional cases will a court hold a strategic choice unsound. *Martin v. State*, 526 S.W.3d 169, 192 (Mo. App. W.D. 2017). At the evidentiary hearing, trial counsel testified that Movant had agreed to the alibi defense for trial, and that she focused on that defense theory throughout the trial. Trial counsel affirmed that presenting evidence of Movant's medical disability—to show that Movant was medically unable to commit the charged offenses—could have detracted from the alibi defense. If such evidence would have been introduced, two different and contradictory defense theories would have been presented: (1) Movant was not present at Victim's apartment and, therefore, he could not have committed the charged offenses, and (2) if Movant was present, he was not physically capable of carrying out the charged offenses due to his physical disability. Trial counsel chose to focus on establishing that "[Movant] was not present" at Victim's apartment on February 18th and 19th, and, therefore, Movant could not have committed the charged crimes. It is not ineffective assistance of counsel for trial counsel to pursue a reasonable strategic decision to employ a certain defense theory to the exclusion of another defense theory. *King v. State*, 505 S.W.3d 419, 426 (Mo. App. E.D. 2016).

Second, Movant was granted an evidentiary hearing and failed to provide proof that his medical records would have provided him with a viable defense. Allegations in a post-conviction motion are not self-proving. *Gittemeier v. State*, 527 S.W.3d 64, 71 (Mo. banc 2017). At an

16

evidentiary hearing, a movant has the burden to prove his claims of ineffective assistance by a preponderance of the evidence. *Id.*; Rule 29.15(i). "Failure to present evidence at a hearing in support of factual claims in a post-conviction motion constitutes abandonment of that claim." *Gittemeier*, 527 S.W.3d at 71.

Following the close of the evidence at the evidentiary hearing, Movant's PCR counsel admitted he had not submitted the medical records to the court because he did not have them. The following exchange transpired:

> [Court]: What's in the records?
> [PCR Counsel]: I'm not sure, because I haven't seen them.
> [Court]: What do you allege would assist the [M]ovant that would be in those records?
> [PCR Counsel]: I believe that the medical records would have shown that he was not capable of committing the violent acts towards [Victim], that she said that he did…
> [PCR Counsel]: I want to be clear, Judge. Because I think I was a little bit confusing earlier. I don't think we have satisfied our burden on point B, with the medical issue, medical records. So I am not making that argument.

By failing to produce his medical records—the same medical records he argues his trial counsel failed to present at his trial—Movant failed to prove that its contents would have provided him with a viable defense; Movant did not present medical evidence supporting that his physical disability rendered him incapable of committing the charged offenses. Movant even conceded that he had not met his burden as to this point at his evidentiary hearing. Therefore, because Movant failed to prove by a preponderance of evidence that his trial counsel was ineffective for failing to present medical records and other evidence of his disability, we find that the motion court did not clearly err in denying Movant's Rule 29.15 motion.

Point III is denied.

Point IV

In his fourth point, Movant argues that the motion court clearly erred in denying his PCR motion because Movant proved by a preponderance of the evidence that his trial counsel was ineffective for failing to impeach Victim with her prior inconsistent testimony regarding how long she worked as Movant's health care aide and whether Movant was under doctor's orders to not lift more than five pounds.

The decision whether to impeach a witness is presumed to be a matter of trial strategy. *Tucker v. State*, 468 S.W.3d 468, 474 (Mo. App. E.D. 2015). In an ineffective assistance of counsel claim, a movant can overcome this presumption by demonstrating that the decision was not a matter of reasonable trial strategy and such action would have provided a viable defense or changed the outcome of the trial. *Id.*; *Baumruk v. State*, 364 S.W.3d 518, 533 (Mo. banc 2012). As a result, the manner and extent of trial counsel's impeachment of a witness, absent something more, does not warrant post-conviction relief. *Steele v. State*, 551 S.W.3d 538, 548 (Mo. App. E.D. 2018).

During redirect examination, Victim testified that she was unaware of anything in Movant's physical condition that would have prevented him from grabbing her by her hair or choking her. During recross-examination, trial counsel focused on Victim committing fraud and lying under oath in the following line of questioning:

> [Trial Counsel]: You testified on redirect that you worked in home health care, correct?
> [Victim]: Yes.
> [Trial Counsel]: You were an aide?
> [Victim]: Yes.
> [Trial Counsel]: And you were an aide to [Movant], correct?
> [Victim]: Yes.
> [Trial Counsel]: You have testified that you signed up because he received disability?
> [Victim]: Yes.

18

[Trial Counsel]: But you provided no services?

[Victim]: I didn't.

[Trial Counsel]: So you lied when you applied for the job?

[Victim]: Yes, I did.

[Trial Counsel]: And you accepted money for not doing the work you said you did?

[Victim]: Yes, I did…

[Trial Counsel]: You needed a job, but you didn't do the job according to your testimony?

[Victim]: I didn't.

[Trial Counsel]: So you lied?

[Victim]: Yes, I did.

[Trial Counsel]: And you collected money?

[Victim]: Yes.

[Trial Counsel]: Okay. So you defraud[ed] the health care agency and government, right?

[Victim]: I guess.

[Trial Counsel]: Because you needed the money?

[Victim]: I did…

[Trial Counsel]: So your testimony today under oath, you were sworn to tell the truth, right? Is that correct?

[Victim]: Yes.

[Trial Counsel]: You've admitted under oath today to lying to get money from a job that you didn't do, right?

[Victim]: Yes.

[Trial Counsel]: This went on for more than one month, right?

[Victim]: No, it went on for, like, I got a check two weeks and then they cut him off and said they didn't believe he needed services.

[Trial Counsel]: So you got a check for two weeks?

[Victim]: Yes. For two weeks of work.

[Trial Counsel]: Work that you didn't do?

[Victim]: Right.

[Trial Counsel]: Did you pay the money back?

[Victim]: No.

[Trial Counsel]: Did you go tell them, hey, I lied?

[Victim]: No, I didn't…

[Trial Counsel]: You told [the police officers] the story about what happened that night?

[Victim]: Yes.

[Trial Counsel]: And you lied to the police officers that night?

[Victim]: No, I didn't.

Movant contends that trial counsel was ineffective for failing to impeach Victim based on

prior statements regarding how long she worked as Movant's health care aide and her knowledge

19

of Movant's disability. We find that neither of these subjects would have provided Movant with a viable defense. As the motion court noted, Movant's restriction to not lift over five pounds would not have prevented Movant from kidnapping (confining Victim to her apartment without her consent by blocking her exit) and assaulting Victim (pushing Victim to the wall, choking her, and hitting her over the head with pliers) because none of those actions required heavy lifting. *See Crowder v. State*, 258 S.W.3d 82, 84 (Mo. App. S.D. 2008) (holding that trial counsel's failure to offer evidence of defendant's hand injury to show that he could not have held a gun or shot the victim was a reasonable trial strategy, and therefore did not constitute ineffective assistance of counsel; trial counsel reasoned that a physician's testimony would not have provided defendant with a viable defense).

Here, trial counsel's decision to not impeach Victim on the two aforementioned subjects was reasonable trial strategy. The record demonstrates that while trial counsel could have impeached Victim based on the two specific subjects, she made a strategic decision to impeach Victim on different grounds. Because Movant's defense was alibi, trial counsel testified that she did not want to focus the jury's attention on Movant's disability or on Victim's work as Movant's health care aide because those topics were not directly related either to Movant's charges or to his defense. "[T]he reasonableness of counsel's strategic decision-making must be viewed as of the time the decision occurred, taking into consideration the circumstances of the case." *Tucker*, 468 S.W.3d at 474 (citing *Strickland*, 466 U.S. at 689).

Trial counsel explained that it was her strategy during trial to focus on the strongest points of impeachment rather than every possible point that could be raised; such a decision is not ineffective assistance of counsel. *See Davidson v. State*, 308 S.W.3d 311, 317–18 (Mo. App. E.D. 2010) (holding that trial counsel was not ineffective for not impeaching State's witness with

her letters and jail records because they would not have provided defendant with a viable defense or affected the outcome of the trial, and trial counsel impeached witness through other admissions at trial). Movant's trial counsel's extensive cross-examination attacked Victim's credibility by getting her to admit that she committed fraud in applying to be Movant's health care aide (rather than highlighting Movant's disability). Trial counsel's line of questioning also resulted in Victim admitting that she had lied under oath. Since Movant has failed to establish that his trial counsel's performance was deficient, we need not analyze the prejudice prong. *See Roberts*, 535 S.W.3d at 797. Thus, Movant has failed to show that his trial counsel was ineffective for failing to impeach Victim.

Point IV is denied.

## IV.    Conclusion

Finding that the motion court did not clearly err in concluding that Movant failed to show by a preponderance of the evidence that his trial counsel was ineffective, we affirm the judgment of the motion court.

_____
Colleen Dolan, Judge

Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

21