

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| ADRIAN R. WASHINGTON, | ) | No. ED111393 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Elizabeth B. Hogan |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 26, 2023 |

## Introduction

Adrian R. Washington ("Washington") appeals from the motion court's judgment denying his Rule 29.15[1] motion for post-conviction relief following an evidentiary hearing. Washington raises three points on appeal. In Point One, Washington argues that the motion court clearly erred in denying his Rule 29.15 motion because Trial Counsel was ineffective for failing to adduce evidence that victim D.B., who testified that his cell phone was stolen, had a cell phone among his personal property immediately after the robbery. Point Two contends the motion court clearly erred in denying his motion for post-conviction relief because Trial Counsel was ineffective for failing to present evidence that DNA found on D.B.'s gun belonged to D.B. and not, as a DNA expert testified, to an "unknown male." In Point Three, Washington alleges the motion court clearly erred in denying his Rule 29.15 motion because Trial Counsel provided

---

[1] All Rule references are to Mo. R. Crim. P. (2019).

ineffective assistance by introducing multiple prior arrest photographs of Washington to impeach a detective who claimed he could not access a photograph of Washington with hair for the photographic lineup. Washington's photograph in the photo spread was the only photograph of a Black male without hair. Because we find that Trial Counsel reasonably focused on a theory of defense that Washington was misidentified, the decision not to adduce evidence about D.B.'s cell phone and DNA was reasonable, and we deny Points One and Two. Similarly, we deny Point Three because seeking to impeach the detective with available photographs of Washington with hair was reasonable strategy in light of Trial Counsel's misidentification defense. Accordingly, we affirm the motion court's judgment.

Factual and Procedural History

In 2016, the State charged Washington with one count of first-degree murder, four counts of first-degree robbery, five counts of armed criminal action, and one count of resisting arrest. The case proceeded to trial in 2018, where the following evidence was presented.[2]

On the night of January 18, 2016, a group of four men—A.B., D.B., C.Cu., and C.Cl.— had plans to see a movie at the theater. They all got into A.B.'s car. A.B. drove, D.B. sat in the passenger seat, and C.Cu and C.Cl. were in the back of the car. D.B. legally carried a Glock 42 gun, which he stored in the console of A.B.'s passenger door. On the way to the movie theater, A.B. received an incoming call on his cell phone from a contact saved as "Baldhead." A.B.'s phone was connected to his car, so the passengers saw "Baldhead" appear on the dashboard console and heard the ensuing conversation over the car speaker. Baldhead asked A.B. to meet up for a drug sale.

---

[2] On appeal from a motion court's denial of a Rule 29.15 motion, we interpret the facts in the light most favorable to the verdict and the judgment. McFadden v. State, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018).

This was not the first time that D.B. and C.Cu had heard of Baldhead. D.B. had previously met Baldhead on three or four occasions. C.Cu. had met Baldhead earlier that day when A.B. and Baldhead met in a park for a brief conversation. Both D.B. and C.Cu. only knew Baldhead by his nickname.

A.B. and Baldhead pulled their cars into an alleyway and parked on a parking pad, and then exited their cars to talk. D.B., C.Cu., and C.Cl. remained in the car, observing A.B. and Baldhead from their seats. While A.B. and Baldhead talked, a masked man carrying a revolver exited Baldhead's car and entered A.B.'s driver-side door. The masked man pointed his revolver at D.B., C.Cu., and C.Cl. and demanded they hand over their possessions. The masked man took D.B.'s money and phone, C.Cu.'s phone, and C.Cl.'s cigarettes. During the robbery, the passengers witnessed Baldhead draw a revolver and fire a single shot toward A.B.'s temple. Baldhead then yelled to the masked man to "[f]inish the job" or "get it over with" so they could leave.

Fearing for his safety, D.B. fired multiple rounds from his Glock 42 at the masked man. The masked man fired back, and D.B. was shot in his hip and head. The masked man and Baldhead then fled the scene. D.B. instructed C.Cl. to grab the phones remaining in A.B.'s car. When police officers arrived, D.B. threw his Glock 42 onto the ground to indicate he was unarmed, and the officers seized the gun for forensic testing.

A.B. died at the scene from his gunshot wound. D.B. was transported to the hospital, where he reported to police officers that Baldhead shot A.B. C.Cu. described the shooter to police officers as being bald with skin pigmentation on his face and hands. C.Cl. could not recall his initial conversation with police officers, but later reported that Baldhead shot A.B.

3

Through a search warrant, police officers obtained call records from A.B.'s phone and discovered that seventy-three calls were exchanged between A.B. and a number associated with Washington in the five days preceding the shooting. Several calls were exchanged between the two numbers in the minutes just before the shooting. Based on this information, the police identified Washington as a suspect.

Washington has vitiligo—or skin pigmentation—and, at the time of the shooting, was bald. The detective ("Detective") prepared a photographic lineup which included a photograph of Washington and several filler photos. Detective selected the fillers by searching for men with skin pigmentation. All the men featured in the filler photographs had skin pigmentation and hair; the photograph of Washington was the only photo of a bald man. The police showed the lineup to D.B., C.Cu., and C.Cl. separately, and each identified Washington as the person who shot A.B.

While cross-examining Detective, Trial Counsel engaged in the following exchange about the photographic lineup:

| | |
|---|---|
| Trial Counsel: | Mr. Washington was the only one with a bald head? |
| Detective: | Correct. |
| Trial Counsel: | You were working off the nickname [B]aldhead, right? |
| Detective: | Correct. |
| . . . . | |
| Trial Counsel: | You would agree that if you are able to find a photo or if you had a photo of Mr. Washington with some type of hair that [] you would have put that in there, that would have made a more fair or reliable lineup, correct? |
| Detective: | Correct. |

Trial Counsel then impeached Detective by showing eighteen of Washington's prior booking photographs, from arrests as early as 2002, in which Washington had hair. The photographs were not redacted, and each photo listed the date of arrest, arresting jurisdiction, case number, as well as Washington's height, weight, and age at arrest. Detective responded that, although he

4

did have access to the photographs through a crime matrix system, he needed a recent photograph of Washington for the lineup and those photos were too old.

At a sidebar, the trial court stated that Trial Counsel had opened the door for the State to bring in Washington's prior arrest history. During redirect examination of Detective, the State introduced the photographs into evidence. Trial Counsel did not request a limiting instruction regarding the booking photographs. The State questioned the Detective about the photographs, but did not elicit any other information about Washington's prior arrests. During closing argument, the State did not reference Washington's prior arrest history.

Relevant to this appeal, no DNA evidence linking Washington to the scene of the shooting was adduced at trial. An expert in cell site location information ("CSLI") testified that Washington's phone was within a two-mile radius of the scene during the crime. Additionally, a St. Louis Metropolitan Police Department's DNA analyst ("DNA Analyst") testified that the seized Glock 42 was swabbed and returned a DNA profile for an "unknown male" who could not be identified through the department database. The masked man had yet to be identified.

The jury found Washington guilty of second-degree murder, four counts of first-degree robbery, five counts of armed criminal action, and one count of resisting a lawful stop. The trial court sentenced Washington to 150 years in prison. This Court affirmed his convictions on direct appeal in State v. Washington, 588 S.W.3d 564 (Mo. App. E.D. 2019).

Washington filed his Rule 29.15 amended motion on May 22, 2020.[3] In his amended motion, Washington brought five claims, including the three points raised in this appeal. The motion court granted Washington an evidentiary hearing on his amended motion, at which both

---

[3] Although the amended motion was untimely filed, the motion court issued a finding that the late filing was solely due to motion counsel and that Washington had been abandoned. Accordingly, the motion court treated the motion as timely under Sanders v. State, 807 S.W.2d 493 (Mo. banc 1991). The State does not challenge this finding.

5

Trial Counsel and Washington testified. At the hearing, Trial Counsel testified that his defense strategy was to establish that Washington was not involved in the shooting and had been misidentified by D.B., C.Cu., and C.Cl. Trial Counsel asserted that the photographic lineup was improperly suggestive because the photograph of Washington, whom the witnesses only knew as Baldhead, was the only photo of a bald man in the photo array. Additionally, Washington introduced evidence that D.B.—who testified his cell phone was stolen—was in possession of a phone when he was transported to the hospital. When asked why he did not impeach D.B. on the issue, Trial Counsel testified that his focus while cross-examining D.B. was the misidentification of Washington. Trial Counsel expounded that identification was especially important with D.B. because Trial Counsel believed D.B. had the "best view" of the shooter. Washington also adduced evidence that the DNA found on the Glock 42 produced a Combined DNA Index System ("CODIS") hit to D.B., and not an "unknown male" as the DNA Analyst had testified. Trial Counsel testified that he did not attempt to impeach D.B. with this evidence because his "concentration" was on identification as the "most important" issue of his defense of Washington. Trial counsel stated that he did not think the presence of D.B.'s DNA on D.B.'s own gun was "an important piece in the case." Trial Counsel further testified that he introduced the prior arrest photographs to show that Detective had access to photos of Washington "with hair that would have made the lineup more reliable." Trial Counsel stated that the State's case heavily relied on eyewitness identification of Washington, and "attack[ing] the photo lineup" to show "[w]hy [D.B., C.Cu., and C.Cl.] would pick him versus somebody else" was critical.

Following the evidentiary hearing, the motion court issued an order denying post-conviction relief. The motion court concluded that Trial Counsel was not ineffective for the challenged conduct because it was reasonable trial strategy for Trial Counsel to focus his defense

6

of Washington on a theory of misidentification to the exclusion of other strategies. This appeal follows.

## Points on Appeal

Washington raises three points on appeal alleging the motion court clearly erred in denying his Rule 29.15 motion due to ineffective assistance of counsel. Point One contends Trial Counsel was ineffective for failing to impeach D.B., who testified that his phone was stolen, by adducing evidence that D.B. had a cell phone among his personal property after the robbery. Washington contends that adducing such evidence would have negated an essential element of the robbery charge. In Point Two, Washington asserts Trial Counsel was ineffective for failing to present evidence that DNA on the Glock 42 matched D.B. and was not, as DNA Analyst testified, attributable to an "unknown male." Washington reasons that failure to impeach D.B., a key witness for the State, on this issue was prejudicial. Last, Point Three maintains that Trial Counsel was prejudicially ineffective for impeaching Detective with eighteen photos from Washington's prior arrests.

## Standard of Review

"Appellate review of a motion court's Rule 29.15 judgment 'is limited to a determination of whether the motion court's findings of facts and conclusions of law are clearly erroneous.'" Marshall v. State, 567 S.W.3d 283, 290 (Mo. App. E.D. 2019) (quoting Price v. State, 422 S.W.3d 292, 294 (Mo. banc 2014)); see also Rule 29.15(k). We presume the motion court's findings are correct, and we deem them clearly erroneous only if, in light of the entire record, we are left with a "definite and firm impression that a mistake has been made." Jones v. State, 514 S.W.3d 72, 78 (Mo. App. E.D. 2017) (quoting Moore v. State, 328 S.W.3d 700, 702 (Mo. banc 2010)). We will uphold the motion court's judgment if it is sustainable on any ground. Marshall, 567 S.W.3d at 290.

7

## I. Strickland Standard for Post-Conviction Relief

Success on an ineffective assistance of counsel claim requires a movant to satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). To satisfy the first prong, a movant must show that trial counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney. Barton v. State, 432 S.W.3d 741, 749 (Mo. banc 2014). We presume that trial counsel provided competent representation, and the burden is on the movant to identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006).

To satisfy Strickland's second prong, a movant must show prejudice by demonstrating the reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. Id. (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"If a movant fails to establish either the performance or the prejudice prong, then we need not consider the other and the claim of ineffective assistance must fail." Marshall, 567 S.W.3d at 290 (internal quotation omitted).

## II. Points One and Two—Failure to Adduce Evidence about D.B.'s Phone and Gun

Points One and Two challenge Trial Counsel's alleged failure to introduce rebuttal evidence around D.B.'s cell phone and DNA. We address each in turn.

Ineffective assistance of counsel claims "will not lie where the [challenged] conduct involves the attorney's use of reasonable discretion in a matter of trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound." Barton, 432 S.W.3d at 749. In Strickland, the United States Supreme Court recognized the "countless ways" to provide

8

effective counsel, acknowledging that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." 466 U.S. at 689. In this spirit, Missouri courts have repeatedly held that counsel is not ineffective for pursuing one reasonable trial strategy to the exclusion of another. Anderson, 196 S.W.3d at 33; State v. Harris, 627 S.W.3d 47, 56 (Mo. App. E.D. 2021) (holding that counsel was not ineffective for building a defense singularly around identification issues); Jones v. State, 514 S.W.3d 72, 81 (Mo. App. E.D. 2017) (finding an "all-or-nothing" theory of defense was reasonable trial strategy). We thus vest in trial counsel "wide latitude" in choosing his client's best defense. Marshall, 567 S.W.3d at 295.

Generally, the scope of evidence adduced in cross-examination is a "matter[] of trial strategy and left to the judgment of counsel." Roberts v. State, 535 S.W.3d 789, 800 (Mo. App. E.D. 2017). Trial counsel has no obligation to impeach every witness on every discernible matter or to raise every possible defense to every claim. See, e.g., Barton, 432 S.W.3d at 752–53. In Marshall, for example, this Court held that counsel was not ineffective for pursuing the defense theory that his client was not at the scene, to the exclusion of an alternative theory that his client was physically incapable of perpetrating the alleged crimes. 567 S.W.3d at 295. We reasoned that introducing the alternate theory could have "detracted" from the first:

> If such evidence would have been introduced, two *different* and *contradictory* defense theories would have been presented: (1) Movant was not present at Victim's apartment and, therefore, he could not have committed the charged offenses, and (2) if Movant was present, he was not physically capable of carrying out the charged offenses due to his physical disability.

Id. (emphasis added); see also Strickland, 466 U.S. at 681 (listing "the inconsistency of unpursued and pursued lines of defense" as relevant to a strategy's reasonableness).

A. Point One—Trial Counsel Was Not Ineffective for Failing to Adduce Testimony about D.B.'s Cell Phone

Washington's first point challenges Trial Counsel's failure to adduce evidence about D.B.'s cell phone. Specifically, D.B. testified that the masked man robbed him of both a cell phone and money. After the robbery, however, police seized D.B.'s personal property, which included a cell phone. Washington argues that Trial Counsel's failure to impeach D.B. on this issue fell below an objectively reasonable standard of care. He further alleges the error was prejudicial because the impeachment testimony would have negated an essential element of the robbery charge.

Trial Counsel testified that the focus of his theory of defense was that Washington had been misidentified. Trial counsel reasoned that the State's case rested primarily on D.B., C.Cu., and C.Cl.'s identifications of Washington—particularly so with D.B. because of his position in the car and view of the shooting. Trial Counsel further testified that, other than the CSLI evidence placing Washington within a two-mile radius of the scene, the State introduced no physical evidence linking Washington to the scene. Under these circumstances, we hold Trial Counsel reasonably pursued a trial strategy based upon a singular theory of misidentification. See Harris, 627 S.W.3d at 56; Jones, 514 S.W.3d at 81. Moreover, impeaching D.B. about the phone potentially would have presented two different and contradictory defense theories. In the first, Washington *was not* present and had been misidentified. In the second, Washington *was* present, but he had not taken D.B.'s phone. It was not objectively unreasonable for trial counsel to choose the former to the exclusion of the latter. See Marshall, 567 S.W.3d at 295; Anderson, 196 S.W.3d at 33.

Washington has failed to meet his burden of establishing that Trial Counsel's action was not one of reasonable trial strategy. See Anderson, 196 S.W.3d at 33. We need not reach the prejudice prong. See Marshall, 567 S.W.3d at 290. Point One is denied.

B.    Point Two—Trial Counsel Was Not Ineffective for Failing to Adduce Evidence about D.B.'s DNA

Washington's second point on appeal challenges Trial Counsel's failure to adduce testimony about the DNA swabbed from D.B.'s Glock 42. At trial, D.B. testified that he legally carried a Glock 42 and exchanged fire with the masked man. Expert testimony established that the gun was subsequently seized for forensic testing, including a DNA analysis. The DNA Analyst said the DNA profile was "consistent with the DNA of an unknown male" who "doesn't match anybody else in [the] database." However, a police report stated the DNA produced a CODIS match for D.B. Washington posits that Trial Counsel's failure to present evidence of the true DNA match was objectively unreasonable. Washington argues he was prejudiced because D.B. was a key witness for the State and, had his credibility been compromised, then Washington would have been acquitted on at least one count.

At the evidentiary hearing, Trial Counsel stated that he did not adduce evidence about the DNA match because he did not think it was important, whereas the identification issue was "the most important." Trial Counsel further testified, "There is no dispute that it was [D.B.'s] gun where he admitted that was his gun, that's why my focus wasn't necessarily on that gun or what the DNA was on that gun."

Again, we find Trial Counsel's decision to focus on a theory of misidentification to the exclusion of other theories was reasonable trial strategy. Anderson, 196 S.W.3d at 33.

Moreover, we find unavailing Washington's argument that failure to adduce such evidence constituted prejudicial error. "The mere failure to impeach a witness does not entitle a movant to relief." Barton, 432 S.W.3d at 750. To establish prejudice on a failure to impeach claim, the movant has the burden of showing that, "had the witness been impeached, it would have provided a viable defense or otherwise met the Strickland standard." Black v. State, 151

11

S.W.3d 49, 55–58 (Mo. banc. 2014) (finding a movant was prejudiced where unoffered testimony "went to a central, controverted issue on which the jury focused during deliberations"). Testimony that negates an element of the crime for which the movant was convicted constitutes a "viable defense." Hays v. State, 360 S.W.3d 304, 311 (Mo. App. W.D. 2012). Thus, Washington has the burden of establishing that impeaching a witness about D.B.'s DNA being found on D.B.'s own gun would have provided a defense to murder, robbery, armed criminal action, or resisting arrest, or, in the alternative, casts doubt on the outcome of the trial. See id.; see also Black, 151 S.W.3d at 57–58. Washington has failed to do so. D.B. never testified that his own DNA would *not* be present on the Glock. To the contrary, D.B. testified that the Glock belonged to him, he carried and fired the gun on the night of the shooting, and dropped the gun on the ground when police arrived. Washington has failed to prove how adducing evidence that D.B.'s DNA was found on D.B.'s gun somehow would offer a viable defense to the charges against him. See Black, 151 S.W.3d at 55–58. Nor are we persuaded that adducing evidence of the presence of D.B.'s DNA would have compromised D.B.'s credibility in a manner as to cast doubt on the verdict. See id.

The motion court did not clearly err in finding that Trial Counsel was not ineffective for failing to impeach a witness about the source of the DNA on D.B.'s gun. See Marshall, 567 S.W.3d at 290. Point Two is denied.

III. **Point Three—Introduction of Eighteen Prior Arrest Photographs**

Like his first two points, Washington's third point on appeal challenges Trial Counsel's trial strategy of primarily focusing on the impeachment of identification testimony. Specifically, Washington alleges that Trial Counsel was ineffective for impeaching Detective with eighteen of Washington's prior arrest photographs, thereby opening the door for the State to adduce evidence of Washington's prior arrest history.

Resolving this point requires us to balance two sound principles of criminal law. The first principle is the right of a defendant to be tried only for the offenses for which he was charged. Mason v. State, 552 S.W.3d 191, 195 (Mo. App. E.D. 2018). Cases are legion in holding that evidence of a defendant's prior uncharged misconduct is generally inadmissible. See e.g., id.; Gurley v. State, 431 S.W.3d 511, 517 (Mo. App. E.D. 2014). As it relates to the admission of prior arrest photographs, Missouri caselaw establishes that prejudicial error results when the photos contain information raising an inference of prior criminal action. Compare State v. Young, 943 S.W.2d 794, 798–99 (Mo. App. W.D. 1997) ("Admission of a mug shot constitutes prejudicial evidence of other crimes only when the mug shot or accompanying testimony discloses a defendant's prior arrests or convictions.") and State v. Motley, 740 S.W.2d 313, 317 (Mo. App. E.D. 1987) (finding error where arrest photos listing unredacted "inculpatory information," such as the arresting jurisdiction and an identification number, were admitted) with State v. Williams, 18 S.W.3d 425, 433 (Mo. App. S.D. 2000) (finding no error where arrest photos were admitted but "tabs concealed the source of the photograph").

The second principle, well-established under Strickland, is that "[r]easonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Mason, 552 S.W.3d at 194 (internal quotation omitted). "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

The introduction of evidence is a matter of trial strategy that is generally unchallengeable. Barton, 432 S.W.3d at 755. The Supreme Court of Missouri has previously described the

13

decision to introduce "evidence that both helps and hurts" as one of trial strategy. State v. Parker, 886 S.W.2d 908, 931 (Mo. banc 1994). In Parker, a movant challenged trial counsel's decision to introduce into evidence during the penalty phase a deposition containing information about his uncharged crimes. Id. The Court concluded that trial counsel's decision did not constitute ineffective assistance because, despite the deposition's "damaging aspects, . . . it also contained substantial mitigating evidence[.]" Id. Recognizing that counsel must weigh a piece of evidence's benefits against its damaging aspects reiterates a central tenet of Strickland: that the challenged conduct must be considered in light of the *totality of circumstances*. See Anderson, 196 S.W.3d at 33.

Here, Trial Counsel testified that he employed a misidentification strategy because of the State's reliance on identification testimony by D.B., C.Cu., and C.Cl. Trial Counsel specifically testified that this strategy required him to attack Detective's photographic lineup and interrogate whether the biased lineup may have caused D.B., C.Cu., and C.Cl. to identify Washington's photograph instead of a different photo. Trial Counsel reasoned that Washington "stood out" in the photo array because he was the only bald man. Trial Counsel only introduced the questioned photographs after Detective testified that he would have included a photo of Washington with hair in the lineup if he had access to one.

We recognize that these photos could have been redacted but were not. We recognize that, when the State subsequently admitted the arrest photos into evidence, Trial Counsel could have requested a limiting instruction but did not. Still, we defer to the Supreme Court's holding that evidence referencing prior uncharged criminal action can be a part of strategy yielding both "helpful and harmful" results, and the decision to introduce it falls squarely within the scope of trial strategy. Parker, 886 S.W.2d at 931. Given Trial Counsel's singular focus on impeaching

14

the process through which Washington was identified as the perpetrator of the charged offenses, we cannot say that it was unreasonable for Trial Counsel to impeach aggressively Detective on his process constructing the photo lineup through unredacted prior arrest photos. See id. Trial Counsel had a reasonable belief that undermining the State's photo lineup as improperly suggestive could cause the rest of the State's case to fall away like dominos.

Even if this Court disagrees with Trial Counsel's strategy, "[t]he question in an ineffective assistance claim is not whether [trial] counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." Anderson v. State, 564 S.W.3d 592, 605 (Mo. banc 2018). We hold it was.

Because Washington fails to satisfy Strickland's performance prong, we need not consider whether the challenged conduct was prejudicial. See Marshall, 567 S.W.3d at 290. Accordingly, the motion court did not clearly err in finding that Trial Counsel was not ineffective for impeaching Detective with Washington's prior arrest photos and in denying Washington's Rule 29.15 motion. See Marshall, 567 S.W.3d at 290. Point Three is denied.

Conclusion

The judgment of the motion court is affirmed.

KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.

15