

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| COREY GRAY, | ) |
| | ) |
| Appellant, | ) WD84965 |
| | ) |
| v. | ) OPINION FILED: |
| | ) December 6, 2022 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable James Walter Van Amburg, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

Corey Gray ("Gray") appeals the judgment of the Circuit Court of Platte County ("motion court"), following an evidentiary hearing, denying Gray's amended motion to vacate, set aside, or correct the judgment and sentence, pursuant to Rule 29.15.[1] On appeal, Gray argues the motion court erred in denying his amended motion because Trial Counsel was ineffective in failing to impeach the complaining witness ("Victim") with her prior

---

[1] All rule references are to Missouri Supreme Court Rules (2021), unless otherwise indicated.

inconsistent statements under oath and, as a result, Gray was prejudiced. Finding no error, we affirm the judgment of the motion court.

## Factual Background

The facts of this case, viewed in the light most favorable to the verdict, were recounted by this Court on direct appeal in a memorandum opinion:

> On February 21, 2015, Victim, who was then ten years old, went to a hotel with her twin sister, her younger twin brothers, and her mother to visit her aunt, uncle, and cousins, including her cousin, [Gray], who was nineteen years old at the time. At the hotel, the families went swimming and then picked up dinner at a local grocery store and brought it back to the hotel to eat. Victim's aunt rented a second room so that Victim's family could stay the night. Victim stayed in the room with her aunt, uncle, sister, Gray, and another cousin, while her mother, brothers, and younger cousins stayed in the second room. In the room Victim was in, there were two beds; Victim's aunt and uncle slept in one bed, while Victim, her sister, and Gray slept in the second bed, and her other cousin slept in a chair. Victim slept in between her sister and Gray.
>
> At some point in the middle of the night, Victim awoke because Gray was touching her breasts with his hands, underneath her clothing. Victim asked him to stop, but, rather than stopping, Gray began touching Victim's vagina and inserting his fingers inside her. Victim described the contact as painful. Gray eventually stopped, and they all then went back to sleep. The next morning, during breakfast, Gray whispered to Victim not to tell anyone about what happened.
>
> After Victim and her family returned home, Victim told her sister what had happened, and her sister then told their mother. Victim's mother immediately took Victim to the hospital, where Victim was examined by a nurse. The physical examination revealed "redness over [Victim's] clitoral hood," which was an abnormal finding and consistent with Victim's report of Gray's actions. Subsequent genetic testing on one of the external genital swabs collected during Victim's examination revealed the presence of male DNA. And, on March 4, 2015, Victim spoke with an interviewer at a child advocacy center and explained what Gray had done to her.
>
> *State v. Gray*, WD 83386 (Mo. App. W.D. Oct. 27, 2020).

The State charged Gray with one count of first-degree statutory sodomy, section 566.062,[2] and one count of first-degree child molestation, section 566.067. The original indictment charged Gray with statutory sodomy for "inserting his fingers in [Victim's] vagina." The State sought leave to amend the indictment to charge Gray with statutory sodomy for "using his hand to touch [Victim's] vagina," which was sustained by the trial court. Gray's first trial ended in a mistrial. His second trial resulted in guilty verdicts by the jury on both counts. The court sentenced Gray, in accordance with the jury's recommendation, to serve fifteen years for first-degree statutory sodomy and five years for first-degree child molestation, and the court ordered the sentences to run consecutively.

This Court affirmed the judgment of conviction on direct appeal. *See State v. Gray*, 610 S.W.3d 413 (Mo. App. W.D. 2020) (per curiam). Gray filed a timely motion to vacate, set aside or correct the judgment or sentence, pursuant to Rule 29.15, and appointed counsel filed a timely amended motion. At the evidentiary hearing, Gray's trial counsel ("Trial Counsel") testified. Trial Counsel represented Gray at both trials and cross-examined Victim at each trial. In Gray's amended motion, he argued Trial Counsel was ineffective in failing to impeach Victim on cross-examination during the second trial regarding Victim's prior inconsistent statements, and Gray argued this ineffectiveness prejudiced him. The motion court found that Trial Counsel was not ineffective in failing to impeach Victim with the prior inconsistent statements during the second trial, and Gray was not prejudiced. This timely appeal follows.

---

[2] All statutory references are to Revised Statutes of Missouri (2000), as supplemented through February 21, 2015, unless otherwise indicated.

3

## Standard of Review

Appellate review of the motion court's judgment under Rule 29.15 is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake has been made." *King v. State*, 638 S.W.3d 113, 117 (Mo. App. W.D. 2022) (quoting *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000)). "It is incumbent upon the movant in a post-conviction motion to prove his claims for relief by a preponderance of the evidence." *Dishmon v. State*, 248 S.W.3d 656, 660 (Mo. App. S.D. 2008); Rule 29.15(i).

## Analysis

"To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy the two-pronged *Strickland* test." *Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the movant must show counsel failed to perform to the degree of skill, care, and diligence that a reasonably competent attorney would under similar circumstances." *Lindsey v. State*, 633 S.W.3d 547, 551 (Mo. App. W.D. 2021). This requires that the movant show that counsel's representation "fell below an objective standard of reasonableness." *Jindra*, 580 S.W.3d at 641; *Strickland*, 466 U.S. at 688. The movant must then show that he was prejudiced by this failure. *Jindra*, 580 S.W.3d at 641. "Prejudice occurs when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting

4

*Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013)). "A movant must overcome the strong presumption that counsel's conduct was reasonable and effective." *Id.* "To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotations omitted). A trial strategy decision is ineffective only if the decision is unreasonable, and the choice of one reasonable trial strategy over another is not ineffective assistance. *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012).

"The mere failure to impeach a witness does not entitle a movant to relief." *Barton v. State*, 432 S.W.3d 741, 750 (Mo. banc 2014). "The decision whether to impeach a witness is presumed to be a matter of trial strategy." *Marshall v. State*, 567 S.W.3d 283, 296 (Mo. App. E.D. 2019). "In an ineffective assistance of counsel claim, a movant can overcome this presumption by demonstrating that the decision was not a matter of reasonable trial strategy and such action would have provided a viable defense or changed the outcome of the trial." *Id.*

Trial Counsel's decision to not impeach Victim with her prior inconsistent statements on cross-examination during the second trial was reasonable trial strategy and was not ineffective assistance of counsel. At the first trial, Victim testified on direct examination that Gray reached his hand under her pants and was "putting his hand inside of [her] and feeling around." On cross-examination, Trial Counsel showed Victim statements that she had made during a pre-trial deposition stating that Gray had touched "around" her vagina, but not inside her vagina. Trial Counsel asked Victim if she was changing her testimony from the deposition, and Victim said, "Yes." Trial Counsel also

5

asked Victim, "So it's your testimony today, that your testimony at the deposition was not true?" Victim responded, "Yes." On redirect examination, Victim testified that it was difficult to remember exactly what happened in the hotel room, but she affirmed that Gray had touched her vagina. The first trial ended in a hung jury.

At the second trial, Victim testified on direct examination that Gray touched her vagina and was "feeling around" but did not testify that Gray put his fingers inside her vagina. On cross-examination, Trial Counsel did not reference her testimony from the first trial in which she stated Gray penetrated her vagina with his finger. Instead, Trial Counsel questioned Victim on why she did not wake somebody up in the hotel room when she first became aware that Gray was molesting her.

At the evidentiary hearing, Trial Counsel testified that his strategy during the first trial was to impeach the Victim with her prior inconsistent statements from the deposition regarding digital penetration. However, Victim's testimony at the second trial was consistent with her testimony at the deposition regarding a lack of penetration. Trial Counsel testified that he decided not to impeach Victim at the second trial with her prior inconsistent statements from the first trial because it would place the issue of digital penetration before the jury in the second trial and also, the cross-examination during the first trial was not as effective as it appeared in the transcript. Trial Counsel testified that, although the "transcript looks like a textbook-perfect kind of cross-examination -- actually experiencing it, it did not go well. [Victim] was very confident." Trial Counsel testified that Victim "acknowledged that her prior testimony was inconsistent and still confidently went with what she testified at the trial." Trial Counsel was unsure about conducting the

6

same cross-examination because he believed that it failed the first time. Even though Victim's testimony during the first trial showed some inconsistencies, Trial Counsel testified, "It was not a meaningful inconsistency. On redirect, it's easy to bolster a child about not knowing the specifics of sex acts. So [I] don't think I scored any points with the jury during that first trial on that cross-examination." Trial Counsel's trial strategy at the second trial to avoid impeachment regarding the prior inconsistent statement through cross-examination based on his experience that it was not an effective cross-examination in the first trial was reasonable.

Trial Counsel also testified that, in his opinion, cross-examining Victim with her prior inconsistent statements following her testimony on direct examination during the second trial could have led to a negative result. Victim testified during the second trial that Gray touched her vagina but did not penetrate her. Although the relevant statute required either a touching or penetration to satisfy the elements of the offense, Trial Counsel testified that "the hope is that a jury would think that just touching would not be as bad as penetration. And so when she testified to just touching, I was happy with that, as opposed to testifying about penetration." Trial Counsel testified that Victim's testimony regarding touching, but not penetration, lined up with the jury instructions for lesser-included offenses he planned to submit, which gave Gray a stronger chance at a misdemeanor conviction rather than a felony conviction. Trial Counsel believed that if he cross-examined Victim with prior testimony in which Victim stated that Gray penetrated her, Victim could have stated, "Yeah, he did that too." According to Trial Counsel, "That would have been a really bad response." *See Barton*, 432 S.W.3d at 750 ("The witness was

emotional, and counsel were concerned that cross-examination could have distinct negative consequences."). Further, similar to *Barton*, in which the Court stated that it was reasonable trial strategy to "get [the witness] off the stand as quickly as possible[,]" *id.*, Trial Counsel testified that part of his trial strategy was to keep Victim off the witness stand as much as he could because she was a solid witness. In this regard, Trial Counsel testified that he succeeded because there was no redirect examination of Victim during the second trial. Trial Counsel's trial strategy was reasonable in all respects, and his conduct did not fall below an objective level of reasonableness.

Because Gray failed to make a sufficient showing that Trial Counsel's conduct fell below an objective level of reasonableness, there is no need to address the prejudice prong of the *Strickland* test. *McNeal v. State*, 500 S.W.3d 841, 845 (Mo. banc 2016).

Point denied.

## Conclusion

For the foregoing reasons, the judgment of the motion court is affirmed.

_____

Gary D. Witt, Judge

All concur

8