

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| JEFFREY WEINHAUS, | ) | ED103834 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | 15AB-CC00117 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Keith M. Sutherland |
| | ) | |
| Respondent. | ) | Filed: October 18, 2016 |

### Introduction

Jeffrey Weinhaus (Movant) appeals the motion court's denial of his motion for post-conviction relief under Rule 29.15.[1] He argues the motion court clearly erred in denying his motion without an evidentiary hearing because he pled unrefuted facts showing that his trial counsel was ineffective for failing to call certain witnesses at trial. We affirm.

### Background

In 2013, a jury convicted Movant of felony possession of a controlled substance, misdemeanor possession of 35 grams or less of marijuana, first-degree assault of a law enforcement officer, and armed criminal action. In the light most favorable to the verdict, the evidence at trial, as relevant to this appeal, was the following.[2]

---

[1] All rule references are to Missouri Rules of Criminal Procedure (2015), unless otherwise indicated.
[2] Dickerson v. State, 269 S.W.3d 889, 890 (Mo. banc 2008).

On August 18, 2012, Missouri State Highway Patrol Sergeant James Folsom (Sergeant Folsom) received a phone call from Missouri Circuit Court Judge Kelly Parker regarding a video Movant had posted online, in which Movant had threatened judicial officers, including Judge Parker. Sergeant Folsom reviewed the video. In it, Movant stated that "the People" will "fire" various Missouri officials including the State Courts Administrator, as well as various circuit judges, lawyers, and policemen. Movant also generally referenced corrupt officials and "[his] right to blast you motherf[. . .]ers out of there if we have to." Movant also stated "we have the right to remove you use [sic] of force." Movant stated that "September 14 will be the last day of the Defacto Court. You all [are] fired and will be considered trespassers after that time."

Sergeant Folsom also met with Crawford County officials. Sergeant Folsom discovered that the 911 dispatch center and the courthouse had increased their security because Movant had come to both places and "had put everyone on edge." Sergeant Folsom consulted with other law enforcement officials, and they decided Sergeant Folsom should visit Movant in order to determine whether he actually intended to harm anyone.

On August 22, 2012, Sergeant Folsom and Corporal Scott Mertens (Corporal Mertens) went to Movant's home in Franklin County, Missouri. When Movant stepped outside his residence to speak with the State Troopers, they detected a strong odor of marijuana. After discussing the videos with Movant, the State Troopers asked Movant whether there was marijuana in the house. Movant replied that there was not. Sergeant Folsom and Corporal Mertens detained Movant until other State Troopers arrived, and Sergeant Folsom obtained a search warrant to search the house. During the search of Movant's basement, State Troopers seized drug paraphernalia, scales, a plastic container

2

holding marijuana, a bag containing marijuana, and a small tin containing pills that were later identified as morphine. They also seized computer equipment and video cameras. They found a gun in the nightstand of a dresser in the master bedroom of the home, but it was properly registered to Movant's wife and was not evidence of any crime, so they did not seize it. After the search, Sergeant Folsom gave Movant an inventory of the items they had seized as well as Sergeant Folsom's business card.

Shortly thereafter, Movant began sending emails to Sergeant Folsom asking for the name of Sergeant Folsom's attorney. Movant also filed a writ of replevin requesting his computers back. Movant called Sergeant Folsom's supervisors complaining that Sergeant Folsom had stolen Movant's computer, and Movant also posted a video online in which he said he "should have placed a bullet in [Sergeant Folsom's] head." Movant also posted a video stating he was at his home with his guns loaded.

In the meantime, Sergeant Folsom had met with his supervisors, and they had decided that they were going to arrest Movant for possession of drugs and judicial tampering. Sergeant Folsom contacted Movant and arranged to meet in a public place. Sergeant Folsom did not want to go to Movant's home, due to what Movant had said in the videos, and Sergeant Folsom was pleased to hear Movant make the initial suggestion to meet in a public place. Sergeant Folsom told Movant this meeting was for the purpose of returning Movant's computer equipment, but Sergeant Folsom planned to arrest Movant when they met. Sergeant Folsom also sought to have other law enforcement officials accompany him and Corporal Mertens when they met Movant. Sergeant Folsom contacted the Franklin County Sheriff's Department to assist in serving the arrest warrant, but no one

3

was available. Sergeant Folsom then contacted two FBI agents they had worked with, who agreed to go.

The State Troopers and federal agents were all at the gas station where they had agreed to meet Movant before Movant arrived. Sergeant Folsom and Corporal Mertens parked in a visible area near the road so they could see Movant arrive, and the FBI agents were in plain clothes and were on the other side of the gas station. Movant pulled into the gas station at a high rate of speed and was removing his seatbelt as he drove past the State Troopers. Once Movant parked, Sergeant Folsom walked toward Movant's vehicle and began to talk to him. Sergeant Folsom was carrying a manila envelope containing the arrest warrant. Sergeant Folsom told Corporal Mertens to go to the back of the police vehicle and open the trunk so that Movant would believe Corporal Mertens was retrieving Movant's computer equipment.

Sergeant Folsom testified that Movant had exited his vehicle and was facing Sergeant Folsom in a "bladed position": at a 45-degree angle, with one foot in front of the other. Sergeant Folsom stepped around Movant's vehicle and saw a holster on Movant's right hip that contained a handgun. While asking Movant why he had a gun, Sergeant Folsom removed his own handgun from the holster on his hip and held it down by his side in front of his hip. Movant said he was authorized to have a gun, and he moved his right hand to his holster and began manipulating the flap on the holster. Sergeant Folsom ordered Movant to get down on the ground, and Movant did not comply, but turned and squarely faced Sergeant Folsom. Movant opened the flap of the holster and placed his hand on the buttstock of the weapon.

4

Sergeant Folsom raised his weapon and again ordered Movant to get on the ground. Corporal Mertens also ordered Movant to get down on the ground. Movant replied, "you're going to have to shoot me" and continued to draw his weapon. Sergeant Folsom saw the gun nearly out of the holster, and at that point he fired two shots into Movant's chest and one into Movant's head. Corporal Mertens also fired a shot at Movant because he believed Movant was a threat to Sergeant Folsom. Sergeant Folsom heard the shot and fired an additional shot into Movant's head. Movant collapsed onto the ground. Corporal Mertens called an ambulance while Sergeant Folsom handcuffed Movant and took Movant's gun from his hand, with FBI Agent Mike Maruschak covering Sergeant Folsom.

The State charged Movant with possession of a controlled substance (morphine), tampering with a judicial officer, possession of up to 35 grams of marijuana, assault of a law enforcement officer in the first degree (against Sergeant Folsom), assault of a law enforcement officer (against Corporal Mertens), two counts of armed criminal action, and resisting arrest. At trial, after the State presented testimony from Sergeant Folsom, the State offered a video into evidence. The video was taken from a camera that was on a watch that Movant had been wearing at the gas station, and it captured the entire incident. At the close of the State's evidence at trial, the trial court granted Movant's motion for judgment of acquittal on the charges of tampering and resisting arrest. The trial court concluded that Movant's threats against judicial officers in his video were not sufficient to support the charge of tampering, and that there was no evidence Movant was aware he was being arrested when he met the State Troopers at the gas station.

The jury convicted Movant of all counts but assault of a law enforcement officer (against Corporal Mertens) and the associated charge of armed criminal action. After a

5

sentencing phase, the jury recommended sentences of two years for possession of morphine, one year for possession of marijuana, 30 years for first-degree assault of a law enforcement officer, and 30 years for armed criminal action. The trial court sentenced Movant in accordance with the jury's recommendation and ordered the sentences to run concurrently. This Court affirmed Movant's convictions and sentence on appeal. State v. Weinhaus, 459 S.W.3d 916 (Mo. App. E.D. 2015).

Movant timely filed his Rule 29.15 motion, alleging several grounds of ineffective assistance of counsel. As relevant for this appeal, he alleged that his trial counsel was ineffective for failing to call several witnesses. Among these, Movant argued that his trial counsel should have had a forensic expert and a video expert testify, regarding the video taken from Movant's watch. Movant argued that the video was inconsistent with the State Troopers' testimony regarding Movant's words and actions. Movant also argued his trial counsel was ineffective for failing to call witnesses who (1) would have testified they did not see Movant wearing a holster, or (2) would have testified regarding his usual practice for wearing a holster while driving; both in order to contradict the State Troopers' testimony that Movant had a holster holding a gun on his right hip. The motion court denied Movant's motion without an evidentiary hearing, finding that the record conclusively refuted Movant's claims. This appeal follows.

## Standard of Review

Our review of the motion court's denial of a Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k); Price v. State, 422 S.W.3d 292, 294 (Mo. banc 2014). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the

6

court is left with the definite and firm impression that a mistake has been made." Price, 422 S.W.3d at 294 (quoting Moss v. State, 10 S.W.3d 508, 511 (Mo. banc 2000)).

"A movant is not entitled to an evidentiary hearing unless: (1) the movant pleaded facts, not conclusions, warranting relief; (2) the facts alleged raised matters not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant." Matthews v. State, 175 S.W.3d 110, 113 (Mo. banc 2005). In the context of claims of ineffective assistance of counsel, as here, "the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced." Morrow v. State, 21 S.W.3d 819, 823 (Mo. banc 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To demonstrate prejudice, the facts alleged must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Morrow, 21 S.W.3d at 823 (citing State v. Carter, 955 S.W.2d 548, 554 (Mo. banc 1997)).

## Discussion

Movant raises four points on appeal. In each of them he argues the motion court clearly erred in denying his motion without an evidentiary hearing because he alleged unrefuted facts that his counsel was ineffective for failing to call certain witnesses at trial.

In order to be entitled to an evidentiary hearing on a claim of ineffective assistance for failure to call a witness, Movant has to allege unrefuted facts establishing: "1) trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify; and 4) the witness's testimony would have produced a viable defense." McIntosh v. State, 413

7

S.W.3d 320, 328 (Mo. banc 2013) (quoting Worthington v. State, 166 S.W.3d 566, 577 (Mo. banc 2005)) (internal alteration omitted). "Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless [Movant] clearly establishes otherwise." McIntosh, 413 S.W.3d at 328 (quoting Williams v. State, 386 S.W.3d 750, 753 (Mo. banc 2012)). We discuss each of Movant's points on appeal in turn.

## Point I

Movant argues the motion court clearly erred in denying his motion without an evidentiary hearing because he alleged unrefuted facts showing his trial counsel was ineffective for failing to call a crime scene forensic expert, such as Gene Gietzen, who would have testified that Movant's movements on the video taken from the camera on the Movant's watch were inconsistent with Sergeant Folsom's testimony that Movant moved from a "bladed position" to facing Sergeant Folsom squarely. We disagree.

One of the things Movant's motion had to allege was that this testimony would have provided Movant a viable defense. However, Movant's argument here is simply that this testimony regarding the body movements an expert could have inferred from the video taken from the watch on Movant's wrist that day would impeach the testimony of Sergeant Folsom that Movant began in a "bladed position" and then turned to face Sergeant Folsom directly. The failure to offer testimony that would have only impeached the testimony of a State's witness does not warrant relief for ineffective assistance of counsel. Whited v. State, 196 S.W.3d 79, 82 (Mo. App. E.D. 2006). Rather, "when the testimony of the witness would *also* negate an element of the crime for which a movant was convicted, the

8

testimony provides the movant with a viable defense." Id. (citing Williams v. State, 8 S.W.3d 217, 219-20 (Mo. App. E.D. 1999)) (emphasis added).

Here, whether Movant moved from a "bladed position" to facing Sergeant Folsom squarely is not an element of any of the crimes for which he was convicted. The jury viewed the video, and Movant's counsel, while not arguing the video contradicted this particular testimony about Movant's body positioning, did argue that the video was inconsistent with the State Troopers' testimony in a number of ways. Even assuming *arguendo* Movant did not move from a "bladed position" to squarely facing Sergeant Folsom, the evidence that he was in the act of drawing a weapon when Sergeant Folsom shot him would be undisturbed. Thus, Movant has failed to allege this testimony would have provided him with a viable defense. Movant was therefore not entitled to an evidentiary hearing on this claim, and the motion court did not clearly err in denying his motion in this respect.[3] See McIntosh, 413 S.W.3d at 328. Point denied.

## Point II

Movant next argues that the motion court clearly erred in denying his motion without an evidentiary hearing because he alleged unrefuted facts showing his trial counsel was ineffective for failing to call the FBI agents who were present at the gas station as

---

[3] We note that the motion court summarily denied Movant's motion on the basis that he failed to "state in any of his claims that he was prejudiced by the actions of his attorney," but rather claimed only "that the actions of his attorney might have had some effect," and that this did not meet the standards outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). However, in each of Movant's claims, he alleged that there was a reasonable probability that the outcome of his trial would have been different, but for trial counsel's errors. This is sufficient under Strickland. E.g., Taylor v. State, 382 S.W.3d 78, 81 (Mo. banc 2012) ("The hallmark of Strickland prejudice is a finding, by a reasonable probability, that the movant would have received a different result at trial if counsel had not made the unprofessional errors alleged"). However, we may affirm the motion court's judgment on any basis supported by the record. Stanley v. State, 420 S.W.3d 532, 543 n.9 (Mo. banc 2014). Thus, while we do not affirm on this basis, we do find the record establishes that the motion court did not clearly err in its result.

witnesses, in order to refute testimony that Movant was wearing a holster containing a gun on his right hip. We disagree.

Movant alleged in his motion that both agents testified in depositions that they did not see a holster on Movant's right hip. Movant further alleged that had a holster been on Movant's right hip, the agents would have been able to see it if Movant had been standing in a "bladed position" toward Corporal Mertens or squarely facing Corporal Mertens. However, there was no evidence at trial that Movant faced Corporal Mertens in either of these positions; rather, the testimony was that Movant faced Sergeant Folsom, and that Corporal Mertens was at a different angle. There was also testimony that the FBI agents were further away, across the parking lot. Therefore, Movant has not alleged unrefuted facts that the gun would have been visible to the agents had it been on Movant's right hip. See Matthews, 175 S.W.3d at 113. Accordingly, even assuming the testimony that the agents did not see a gun on Movant's right hip was true, this does not provide Movant a viable defense.

Moreover, while Movant alleges in a conclusory fashion that no reasonable trial strategy justified his trial counsel's failure to call the agents as witnesses, Movant has not alleged facts that would rebut the presumption that his counsel's decision was anything other than reasonable trial strategy. See McIntosh, 413 S.W.3d at 328. Movant's trial counsel argued in closing argument an adverse inference based on the State's failure to call the agents to corroborate Sergeant Folsom's and Corporal Mertens' testimony, which he would not have been able to do if he had called them to testify. Further, Movant makes no allegation that the agents' testimony would have negated an element of the crimes for which he was convicted; specifically, Movant does not allege they would testify that

10

Movant was not disregarding Sergeant Folsom's directives to get on the ground, that Movant did not reach for a gun, and that Movant did not have a gun in his hand when they approached him after he fell to the ground.

Movant has failed to allege facts that if true would rebut the presumption that his trial counsel acted reasonably. See id. Therefore, the motion court did not clearly err in denying his motion without an evidentiary hearing in this respect. Point denied.

## Point III

In his third point, Movant argues that the motion court clearly erred in denying his motion without an evidentiary hearing because he alleged unrefuted facts showing his trial counsel was ineffective for failing to call Levi Weinhaus (Weinhaus) as a witness, because Weinhaus would have testified that Movant wore his holster on his left hip while driving, contradicting the testimony that Movant was wearing a holster containing a gun on his right hip. We disagree.

In his motion, Movant alleged that Weinhaus would have testified that Movant always wore his holster on his left hip while driving because the holster would interfere with his seatbelt. However, Movant does not allege Weinhaus was present or could have testified as to how Movant wore the holster at the gas station. Further, even if the jury would have inferred from Weinhaus' testimony that Movant wore the gun on his left hip while driving, this would not have contradicted the State Troopers' testimony that the holster was on Movant's right hip by the time he was standing outside his vehicle. Finally, as discussed above, even if one assumes that the gun was on Movant's left hip rather than his right hip, this does not negate an element of any of the crimes of which he was convicted.

11

Thus, Movant's motion failed to allege facts that, if true, would have provided Movant with a viable defense had Movant's counsel called Weinhaus as a witness. See Whited, 196 S.W.3d at 82. The motion court did not err in denying Movant's motion without an evidentiary hearing in this respect. Point denied.

## Point IV

Finally, Movant argues that the motion court clearly erred in denying his motion without an evidentiary hearing because he alleged unrefuted facts showing his trial counsel was ineffective for failing to call a video expert, such as Jim Byrne (Byrne), to testify that Movant's words on the video were actually, "you don't have to shoot me." We disagree.

Movant alleged in his motion that Byrne's testimony would have contradicted Sergeant Folsom's testimony that Movant said, "you're going to have to shoot me." However, here again, this is an allegation only that Byrne's testimony would have impeached Sergeant Folsom's testimony. This alone, without an allegation that the testimony would have negated one of the elements of the crimes, is not sufficient to warrant relief. See Whited, 196 S.W.3d at 82.

Additionally, the jury viewed the video. Movant's trial counsel, when cross-examining Sergeant Folsom, also raised the possibility that what Movant said in the video was "you don't have to shoot me." Movant's counsel also argued during closing argument that Movant spoke softly in the video and could have been saying either phrase, noting that the jury would have to decide what Movant actually said.

Movant has failed to allege facts that if true would warrant relief. Thus, the motion court did not err in denying his motion without an evidentiary hearing in this respect. Point denied.

12

## Conclusion

Movant failed to allege facts that if true would establish his trial counsel's assistance was ineffective. Specifically, while the witnesses would have provided testimony to impeach the State Troopers' testimony in various respects, they would not have provided testimony that negated any element of the crimes for which Movant was on trial. Thus, Movant's motion did not sufficiently allege facts that entitled him to an evidentiary hearing, and the motion court did not err in denying his motion without a hearing. The motion court's judgment is affirmed.

Gary M. Gaertner, Jr., Judge

James M. Dowd, P. J., concurs.
Kurt S. Odenwald, J., concurs.

13