

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FIVE

RALPH GILCREASE,          )      No. ED111503

         Appellant,      )      Appeal from the Circuit Court

         )      of St. Louis County

vs.          )      Cause No. 19SL-CC01868

STATE OF MISSOURI,          )      Honorable John N. Borbonus

         Respondent.      )      FILED: May 21, 2024

### OPINION

Ralph Gilcrease (Appellant) appeals from the motion court's judgment denying his Rule 29.15[1] amended motion for post-conviction relief following an evidentiary hearing. In the first of three points on appeal, Appellant argues that Trial Counsel was ineffective for failing to cross-examine a forensic examiner about a nurse practitioner's questioning of a victim during a sexual assault medical examination. In his second point on appeal, Appellant claims Trial Counsel was ineffective for failing to cross-examine a victim about his recent school suspension serving as a possible motive to fabricate sexual abuse allegations. In Appellant's final claim he asserts that Trial Counsel was ineffective for failing to call a victim's sister as a witness as he alleges she would have provided a viable defense. We are unpersuaded by Appellant's arguments that counsel was ineffective, or that he was prejudiced by these alleged failures under the standard set

---

[1] All Rule references are to Mo. R. Crim. P. (2023), unless otherwise indicated.

forth in *Strickland v. Washington*, 466 U.S. 688 (1984).  Thus, we affirm the judgment of the motion court.

Background

The State charged Appellant with committing multiple sexual offenses against D.H., J.S., and I.W. (Victims), specifically, three counts of first-degree statutory sodomy, § 566.062;[2] two counts of second-degree statutory sodomy, § 566.064, RSMo.; one count of enticement of a child, § 566.151, RSMo. (Cum. Supp. 2007); two counts of second-degree child molestation, § 566.068, RSMo; and one count of first-degree child molestation, § 566.067, RSMo. (Cum. Supp. 2007) for acts against D.H., J.S., and I.W.  Following a 2017 trial, the jury found Appellant guilty on all counts.

Prior to trial, the trial court granted a motion in limine barring all evidence of prior bad acts of the State's witnesses, including Victims.  At trial, the State called a Child Advocacy Center forensic examiner (CAC examiner), a Sexual Assault Response Team nurse practitioner (SART nurse), all three child Victims, as well as the Victims' parents, who testified to the incidents and subsequent disclosures.  The defense called Appellant's wife and the police officer who took the report from victim I.W.'s mother about I.W.'s allegations.  At the close of trial, the jury convicted Appellant on all counts.  The trial court then sentenced Appellant as a predatory sexual offender pursuant to § 566.125.5, RSMo. (2016), to consecutive sentences of life imprisonment for the three counts of first-degree statutory sodomy, concurrent sentences of five years for the two counts of second-degree statutory sodomy, one year for each count of second-degree child molestation, ten years for enticement of a child, and ten years for first-degree child

---

[2] All statutory references are to RSMo. (2000) unless otherwise indicated.

molestation.  Appellant directly appealed from his convictions and sentences, and this Court affirmed.  *See State v. Gilcrease*, 567 S.W.3d 298 (Mo. App. E.D. 2019).

*Victim D.H.*

At trial, Victim D.H. stated that, when he was about ten or eleven years old, Appellant, who was also his godfather, molested him.  D.H. testified that one night at his home, he was in the basement of the house asleep and Appellant came down and began sucking on D.H.'s neck.  When D.H. tried to scream, Appellant pushed his face in a pillow.  D.H. testified that "he tried to put it in, but he didn't put it in.  And then it was hurting."  D.H. explained that he was referencing Appellant's penis in his anus.  D.H. then testified that, after that, Appellant began "jacking off" in front of D.H., saying "yeah, baby."  When Appellant ejaculated, D.H. testified that he wiped it off with a towel and then took a shower.  D.H. also testified that, during the same incident, Appellant sucked on D.H.'s penis and D.H. "didn't want him to."  D.H. also testified that Appellant made D.H. suck on Appellant's penis right after Appellant attempted to anally penetrate D.H.  D.H. testified that he told his grandmother the next morning after the incident.  D.H. also testified that his mother saw the "hickeys" on his neck.  D.H.'s mother took him to the hospital where he was examined by a SART nurse.  D.H. additionally testified about a second incident that occurred at Appellant's house wherein Appellant perpetrated similar acts of abuse on D.H.

At trial, the CAC forensic examiner testified about the protocols that forensic examiners apply to elicit reliable information from children.  The CAC examiner stated the purpose of a CAC interview is to provide a safe place for children to talk without the examiner coaxing or suggesting answers.  He explained the interview approach may vary depending on the stage of disclosure the child is in.  In early stages, a child may tentatively disclose abuse, and in a later

3

stage of active disclosure, the child may provide more details about the abuse. CAC examiner also explained why children sometimes are hesitant to share the details of their abuse. CAC examiner testified how his training and experience allow him to have a good indication as to when a child's story is reliable. CAC examiner then testified about his interview with D.H., then eleven years old, where D.H. disclosed abuse by Appellant with statements substantially similar to D.H.'s trial testimony. The video and transcript of this interview were submitted into evidence and played for the jury.

The State also called SART nurse, who testified that she is a nurse practitioner working in sexual abuse management with the Child Protection Team at Children's Hospital and SART for the purpose of medical examination and evidence collection. She testified that she begins with a few general questions, then takes a medical history so that she knows where to look for injury or evidence. She stated that she tries to keep all questions open-ended but sometimes needs to narrow the questions to ascertain what happened in order to provide appropriate medical care for the child and collect medical evidence. SART nurse testified that her primary objective is medical treatment of the child. She also testified that she audio records the medical history conversation but not the physical examination. SART nurse testified that she examined D.H. and followed the protocol to which she previously testified by asking both open-ended and direct questions so she knew physically where to derive her collection of evidence from D.H.'s body. The trial court admitted the audio recording of D.H.'s medical history, which was played for the jury. Based on D.H.'s disclosure, SART nurse swabbed D.H.'s mouth, penis, and anus. The swab from D.H.'s mouth later confirmed the presumptive presence of seminal fluid. The swab from D.H.'s penis later confirmed the presence of saliva. Photos of D.H.'s neck showed three suction hematomas, commonly known as "hickeys."

4

CAC examiner also testified at the post-conviction evidentiary hearing. He reiterated that his role in a CAC forensic interview is to interview children in accordance with a protocol that monitors multiple factors, including the child's ability to recall events, and suggestibility. CAC examiner explained how the protocol requires exercising caution to avoid suggesting answers to children, such as suggesting the identity of the abuser before the child has identified the abuser. He also testified about presenting questions in an "hourglass" format, such that in some instances direct questions are asked and then opened back up to more open-ended questions in order to gather information. CAC examiner reviewed the transcript of SART nurse's interview with D.H. and observed that while some of the questions asked were not open-ended, different professionals have particular protocols to gather information unique to their role in the process of a child victim's disclosure of abuse. He commented that the goal of a CAC forensic examiner is to create a safe space for a child to talk, using the "hourglass" or narrative approach, while the goal of a SART nurse is to determine the best medical response to assess medical needs. Additionally, he testified that it is more common for a medical provider, such as a SART nurse, to ask direct questions than it is for a forensic examiner in a CAC interview.

Trial Counsel testified at the evidentiary hearing about her representation of Appellant with respect to the claims in the amended motion. Regarding the CAC examiner claim, Trial Counsel acknowledged that witnesses are not normally allowed to testify as to the credibility of other witnesses. Trial Counsel testified that she did not recall what she asked the CAC examiner at trial and that, if she did not ask questions about open and close-ended questions, she did not have a strategic reason for not doing so.

*Victim J.S.*

In his trial testimony, J.S. stated that when he was under the age of fifteen, he was alone with Appellant, a friend of his father, and Appellant showed him sexually explicit pictures and questioned him about his sexual history. J.S. testified that Appellant told him he "wanted" him ever since he met him. J.S. also testified that after exiting the bathroom after a shower, Appellant was standing in the doorway of the bathroom in case J.S. "needed any help." At one-point, Appellant asked J.S. to rub lotion on various parts of his body, including Appellant's buttocks. J.S. testified that Appellant and J.S. had oral sex involving both J.S. and Appellant's mouths and penises. The sexual contact continued in another room in the house where J.S. testified that he held Appellant's penis. J.S. testified that, later at a church event, Appellant told J.S. he "missed him" and "want[ed] to do it again." At the time of J.S.'s disclosure of abuse he had been suspended from school for allegedly stealing another student's iPad and had already been disciplined for the alleged misconduct.

On the subject of cross-examining J.S. about his prior school suspension, Trial Counsel testified that, at the time of J.S.'s disclosure, he was already suspended from school and the suspension was never brought up. She also testified that she did not cross-examine J.S. about the suspension and she was unsure if the trial court would have allowed her to pursue such questioning, given the court's pretrial ruling excluding evidence of prior bad acts of State's witnesses. She also testified that she could have tried to argue in Appellant's defense that J.S. was lying because of the suspension and recalled no strategic reason in declining to do so, but acknowledged that the suspension would not have been direct evidence of J.S.'s motive to fabricate claims of abuse, but simply that such an inference could be made.

*Victim I.W.*

I.W. also testified at trial about being sexually abused by Appellant, who is her uncle. I.W. testified that when she was about six years old, Appellant touched her breasts and rubbed them while standing in a hallway one day at her grandmother's house. She testified that she told her sister and mother. I.W. also testified that sometimes her mom would drop off her and her Sister at the home of Appellant and his wife, I.W.'s Aunt, in the morning, where they would routinely sleep in the living room before leaving for school. I.W. testified that on two of these occasions, Appellant came into the living room, pulled his penis out, and began to rub it in front of I.W. and then on I.W.'s body. On cross-examination, the defense asked if I.W. knew whether her Sister remembered anything about the incidents and the State objected on the grounds of speculation, which the trial court sustained.

At the evidentiary hearing, Trial Counsel testified about her decision not to call I.W.'s Sister as a witness at trial. Trial Counsel testified that when interviewing I.W., I.W. indicated that Sister did not remember anything happening to I.W. at Appellant's house. Trial Counsel further testified that while she could have interviewed Sister, she likely chose not to because Sister lived out of state, although Trial Counsel also denied having any strategic reason for not calling her. Trial Counsel testified that the defense to the charges involving I.W. was that it never happened and the "kids were making it up." Trial Counsel also recalled that the trial court sustained an objection to her attempt to ask I.W. about Sister's alleged statements that Sister never witnessed I.W.'s abuse.

The motion court reviewed Sister's deposition by transcript and video. Sister stated that she did not recall telling Mother or police anything about I.W.'s allegations and did not recall whether she had disclosed being abused by Appellant. Sister also did not recall being

7

interviewed by a forensic examiner. She stated that Appellant did not touch her. Sister testified that I.W.'s demeanor was "off" during the relevant time period of abuse but stated she did not witness any abuse.

*Motion Court's Judgment*

Following the evidentiary hearing, the motion court denied Appellant's amended motion for post-conviction relief. The motion court found that on Appellant's first point pertaining to D.H., Appellant suffered no prejudice as CAC examiner commenting on the testimony of SART nurse would be misleading and improper and would not have affected the outcome of the trial. For Appellant's second claim, relating to J.S., the motion court found that the proposed testimony was inadmissible, and even if it had been introduced, it would not have met the *Strickland* standard for deficient performance or prejudice. Finally, regarding Appellant's third claim, concerning I.W., the motion court found that Sister's testimony would not have provided a viable defense or affected the outcome of the trial, and therefore was not prejudicial to Appellant. This appeal follows.

## Standard of Review

"Appellate review of a motion court's Rule 29.15 judgment 'is limited to a determination of whether the motion court's findings of facts and conclusions of law are clearly erroneous.'" *Washington v. State*, 681 S.W.3d 347, 353 (Mo. App. E.D. 2023) (quoting *Marshall v. State*, 567 S.W.3d 283, 290 (Mo. App. E.D. 2019)); *see also* Rule 29.15(k). We presume the motion court's findings are correct. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019). We will find clear error only if, in light of the record, we are left with a "definite and firm impression that a mistake has been made." *Washington*, 681 S.W.3d at 353 (internal quotation omitted). We will uphold the motion court's judgment if it is sustainable on any ground. *Id.; see also* *Marshall*, 567 S.W.3d at 290.

8

<u>Discussion</u>

Courts apply the two-prong *Strickland* test in claims for ineffective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 688 (1984). Under that test, a movant must demonstrate that: (1) trial counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would use in a similar situation; and (2) the movant was prejudiced by that failure. *Shockley*, 579 S.W.3d at 892 (citing *Strickland*, 466 U.S. 688). Appellant must also overcome the strong presumption that trial counsel's conduct was reasonable and effective in order to satisfy the first prong of the test. *Id.* at 892. To overcome that presumption, Appellant must present "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.*

 Decisions of trial strategy cannot serve as a basis for ineffective counsel claims unless the decision is unreasonable. *Id.* at 892. Ordinarily, failure to call a witness or choice of questioning is considered trial strategy. *Davis v. State*, 486 S.W.3d 898, 906, 909 (Mo. banc 2016). Even if trial counsel does not recall a specific trial strategy, it does not overcome the presumption that the decision was based on trial strategy. *Marshall*, 567 S.W.3d at 292 (citing *Hays v. State*, 484 S.W.3d 121, 128 (Mo. App. W.D. 2015)); *see also Dorsey v. State*, 448 S.W.3d 276, 295 n.13 (noting trial counsel's subjective belief is not determinative because the *Strickland* test for ineffectiveness is an objective one and the motion court may believe or disbelieve any of trial counsel's testimony) (internal citation omitted).

To establish the prejudice prong of *Strickland*, a movant must demonstrate that there is a reasonable probability that, but for trial counsel's error, the result would have been different. *Shockley*, 579 S.W.3d at 892; *see also Washington*, 681 S.W.3d at 354. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Shockley*, 579

9

S.W.3d at 892 (citing *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002) (quoting *Strickland*, 466 U.S. at 694))).

*Point I: Trial Counsel's alleged failure to cross-examine CAC examiner on the impact of SART nurse's interview of D.H.*

Appellant claims that Trial Counsel was ineffective for failing to cross examine CAC examiner about SART nurse's questioning of D.H. We disagree. The motion court found both that trial counsel had not acted unreasonably and that Trial Counsel's alleged failure would not have prejudiced Appellant. However, we need not analyze the motion court's conclusion as to whether Trial Counsel Conformed to the degree of skill, care, and diligence of a reasonably competent attorney under similar circumstances, because Trial Counsel's alleged unreasonable failures here, even if substantiated, would not have prejudiced Appellant. *See Michael v. State*, 348 S.W.3d 164, 167 (Mo. App. E.D. 2011) (citing *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989) (finding that, if it is simpler to dispose of a claim of ineffectiveness on the lack of sufficient prejudice alone, that course should be followed.)).

Significant physical evidence was presented at trial regarding D.H.'s allegations. In light of this abundant physical evidence pertaining to the charges involving D.H., it is highly unlikely that the proceeding would have had a different outcome had Trial Counsel cross-examined CAC examiner as proposed. *See Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012) (noting a movant will not satisfy the prejudice prong where there is overwhelming evidence of guilt). In particular, the physical evidence collected from D.H.'s SART examination included Appellant's saliva on D.H.'s penis and presumptive seminal fluid in D.H.'s mouth. The jury also saw photographs of the "hickeys" on D.H.'s neck. Thus, even had the jury heard Appellant's proposed testimony with regard to the CAC examiner's assessment of the SART nurse's questioning, there was overwhelming evidence that Appellant sexually abused D.H. *See id.*

10

Accordingly, we agree with the motion court that it is unlikely such cross-examination testimony would have had a significant bearing on the jury's decision so as to impact the outcome of Appellant's trial. *See Shockley*, 579 S.W.3d at 892 (citing *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002) (quoting *Strickland*, 466 U.S. at 694))). Appellant's inability to establish prejudice is fatal to his claim that Trial Counsel was ineffective. Therefore, we find that the motion court did not clearly err in finding Trial Counsel was not ineffective. *See* Rule 29.15(k). The point is denied.

*Point II: Trial Counsel's alleged failure to cross-examine J.S. about the details of his school suspension as a motive to fabricate allegations.*

Appellant next claims that Trial Counsel demonstrated ineffective performance by failing to cross-examine J.S. about his school suspension to expose a motive to fabricate his allegations against Appellant. Appellant maintains that this evidence would have unqualifiedly supported Appellant's defense. Appellant further argues the motion court erred in denying this claim because it misconstrued his reason for introducing this evidence, inasmuch as it was not offered to claim J.S. was a "bad person" but to bolster Appellant's defense that J.S. had a motive for lying about being sexually abused. Appellant claims that, but for Trial Counsel's error in not introducing this evidence, the jury could have found that J.S. fabricated the allegations against Appellant and thus acquitted him on the charges involving J.S. The motion court found that Trial Counsel's performance was not ineffective as the testimony would not likely have been admissible and moreover, Appellant suffered no prejudicial effect as the proposed testimony would not have affected the outcome of the trial. We agree.

Trial counsel will not be found ineffective for failing to present inadmissible evidence. *McLaughlin v. State*, 378 S.W.3d 328, 346 (Mo. banc 2012). In order for evidence to be admissible, it must be logically and legally relevant. *State v. Campbell*, 675 S.W.3d 223, 228

11

(Mo. App. E.D. 2023) (quoting *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017)).  To be logically relevant, the evidence must tend to make the existence of material fact more or less probable.  *Id.* (quoting *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015)).  To find evidence legally relevant, the trial court must weigh the probative value of the evidence against unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.  *Id.*  Missouri law also recognizes a long-settled prohibition against improper propensity evidence of prior uncharged bad acts.  *See Harding v. State*, 613 S.W.3d 522, 532 (Mo. App. E.D. 2020) (citing *State v. Barriner*, 34 S.W.3d 139, 145 (Mo. banc 2000)) ("As a general rule, evidence of prior uncharged misconduct is inadmissible for the purpose of showing propensity to commit such crimes.").  Evidence of specific prior bad acts is not an appropriate means of impeaching a victim in a sex offense case.  *State v. J.L.S.*, 259 S.W.3d 39, 45 (Mo. App. W.D. 2008); *see also State v. Taylor*, 588 S.W.3d 632, 638–39 (Mo. App. W.D. 2019) (finding that events that happened before a victim reported abuse had no effect on the victim's reporting and therefore, had no logical or legal relevance to prove bias against the defendant).

In the case at bar, the trial court granted a motion in limine barring all evidence of prior bad acts by the State's witnesses.  During trial, in compliance with the pre-trial ruling, Trial Counsel did not question J.S. about his prior school suspension involving the alleged theft of an iPad.  At the evidentiary hearing, when questioned about her trial strategy, Trial Counsel stated she could have tried to argue that J.S. fabricated his allegations against Appellant due to the suspension, but that the topic was likely off limits given the motion in limine ruling.

In *Campbell*, we found that proposed testimony of a mother coaching her daughter to fabricate allegations against defendant because of a denied request to visit the child's grandmother was not legally or logically relevant and thus was properly excluded.  *Campbell*,

12

675 S.W.3d at 229. While a different procedural posture, Appellant's claim poses a similar question. We now turn to whether this specific act of misconduct has any probative value in establishing J.S.'s motive to fabricate abuse allegations. We find none. Here, as in *Campbell*, even under the low bar of logical relevance, we find neither logical nor legal relevance between J.S.'s suspension and a motive to fabricate. *See Campbell*, 675 S.W.3d at 229. J.S. had already been punished through suspension for the alleged stealing of the iPad, and there was nothing in the record that linked the incident and the disclosure. Furthermore, there was no evidence in the record that J.S.'s disclosure mitigated the punishment in any way.

Moreover, in light of the trial court's motion in limine ruling, Trial Counsel would not have been permitted to enter this evidence because it constituted a prior bad act. Thus, Trial Counsel cannot now be deemed to have performed ineffectively for properly limiting her cross-examination. *See McLaughlin*, 378 S.W.3d at 346. Because Appellant did not meet his burden to show Trial Counsel performed ineffectively, we need not analyze the prejudice prong of *Strickland*. *See Washington*, 681 S.W.3d at 358 (quoting *Marshall*, 567 S.W.3d at 290). Thus, the motion court did not err in finding Trial Counsel was not ineffective. *See* Rule 29.15(k). The point is denied.

## *Point III: Trial Counsel's alleged failure to call I.W.'s Sister as a witness.*

In his final claim, Appellant contends that Trial Counsel was ineffective for failing to call Sister to testify. Appellant claims that because Sister did not witness any abuse by Appellant, Sister's testimony would have provided a viable defense and, if introduced, would have caused the jury to find that Sister was more credible than I.W., and therefore he would have been acquitted on the charges pertaining to I.W. The motion court found that Sister's testimony would not have unqualifiedly supported Appellant's defense. Sister's statements that she was

13

close to I.W. and noticed she was "off" during the time period of the abuse, would have ultimately benefitted the State's case. Further, the motion court stated that Appellant's Wife provided the defense that Appellant claims he was denied because she testified that the children were never at Appellant's residence before school. We agree with the motion court.

In order for trial counsel to be found ineffective for failing to call a witness, the Appellant must demonstrate that: (1) trial counsel must have known of the existence of the witness, (2) the witness could have been located through reasonable investigation, and (3) the witness would have testified, and such testimony would have provided a viable defense. *Washington*, 681 S.W.3d at 356; *Winder v. State*, 151 S.W.3d 413, 417 (Mo. App. S.D. 2004) (citing *Helmig v. State*, 42 S.W.3d 658, 667 (Mo. App. E.D. 2001)). "Trial counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a movant's claim of ineffective assistance of counsel unless a movant clearly establishes otherwise." *Hollings v. State*, 662 S.W.3d 821, 829 (Mo. App. E.D. 2023) (quoting *Jones v. State*, 519 S.W.3d 879, 885 (Mo. App. E.D. 2017)) (internal citations omitted). If the proposed witness would have been called to merely impeach the State's witness, rather than negating an element of the offense, then relief is unwarranted. *Weinhaus v. State*, 501 S.W.3d 523, 528 (Mo. App. E.D. 2016) (citing *Whited v. State*, 196 S.W.3d 79, 82 (Mo. App. E.D. 2006) (finding that, unless the testimony of a proposed witness would also negate an element of the charged crime, the testimony could not provide a viable defense)). Additionally, "counsel is not ineffective for not presenting cumulative evidence." *Dorsey*, 448 S.W.3d at 295.

In this case, Trial Counsel did know where Sister could be located, but it is unclear whether Trial Counsel knew or surmised that Sister would testify, and it is even more dubious that Sister's testimony would have unqualifiedly supported Appellant's defense that "the kids

14

were making it up." Sister had little—if any—information to offer in Appellant's defense and generally did not recall much about I.W.'s abuse. Sister was unaware of the abuse against I.W. but stated I.W. seemed "off" during the relevant time period of abuse. As the motion court found, even had Sister testified if called, her testimony could have both potentially helped and hurt the defense, thus it would not have unqualifiedly supported Appellant's defense. *See Washington*, 681 S.W.3d at 356. Moreover, assuming Sister only testified that she was unaware of the abuse, Sister's lack of recalling that Appellant abused I.W. would not negate the offense but would only serve to impeach I.W.'s testimony that Appellant abused I.W. *See Weinhaus*, 501 S.W.3d at 528. Further, Sister's testimony that she was unaware of I.W. being touched by Appellant would have been merely cumulative to other testimony from Appellant's wife, who testified that she did not recall I.W. and Sister being dropped off at her home before school. Appellant claims Sister's testimony would have been more credible to the jury than I.W.'s, but we defer to the motion court's credibility determinations and the motion court plainly rejected this speculative reasoning. *See Shockley*, 579 S.W.3d at 892. Therefore, in light of the record on appeal, Trial Counsel's failure to call Sister to testify was a matter of sound trial strategy. *See Hollings*, 662 S.W.3d at 829.

Because we find that Trial Counsel's performance was not ineffective, the motion court did not clearly err in denying Appellant relief due to Trial Counsel's alleged ineffectiveness. *See* Rule 29.15(k). This point is denied.

## Conclusion

For the reasons set forth above, the judgment of the motion court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Thomas C. Clark, II., C.J., and
Cristian M. Stevens, J., concur.