

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| CORNELL MANLEY, | ) | No. ED102454 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Robin R. Vannoy |
| STATE OF MISSOURI, | ) | |
| | ) | Filed: |
| Respondent. | ) | February 23, 2016 |

Cornell Manley appeals from the judgment denying his claim for post-conviction relief under Rule 29.15 after an evidentiary hearing. We affirm.

Manley was convicted after a jury trial on one count of murder in the first degree, two counts of assault in the first degree and three counts of armed criminal action. He was sentenced to life without parole for the murder, fifteen years for each assault and life imprisonment for each armed criminal action, all to run concurrently. The judgment on his convictions was affirmed on appeal in State v. Manley, 414 S.W.2d 561 (Mo. App. E.D. 2011). Manley filed a pro se motion under Rule 29.15 alleging that trial counsel was ineffective for failing to call his alibi witnesses and for not objecting and seeking a mistrial when the court temporarily closed the courtroom during his co-defendant's testimony. Counsel was appointed and filed a timely amended motion. The motion court held an evidentiary hearing, after which it entered findings of fact and conclusions of law denying Manley relief on both claims. This appeal follows.

Our review is limited to a determination of clear error in the motion court's findings of fact and conclusions of law. Taylor v. State, 382 S.W.3d 78, 80 (Mo. banc 2012). The findings are presumed correct, and we must defer to the motion court's credibility determinations. Tate v. State, 461 S.W.3d 15, 24 (Mo. App. E.D. 2015). The judgment will be deemed clearly erroneous only if the entire record leaves us with the definite and firm impression that a mistake has been made. Taylor, 382 S.W.3d at 80.

To succeed on a claim for ineffective assistance of counsel, a movant must demonstrate by a preponderance of the evidence that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984); Smith v. State, 370 S.W.3d 883, 885 (Mo. banc 2012). To satisfy the first prong of the Strickland test, a movant "must overcome a strong presumption that counsel's conduct was reasonable and effective" by pointing to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Smith, 370 S.W.3d at 886. To satisfy the second prong, a movant must show that, absent the claimed errors, there is a reasonable probability the outcome would have been different. Id. Since both ineffective performance and prejudice are required, the absence of either element is fatal to an ineffective assistance claim. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987).

In his first point, Manley claims that trial counsel was ineffective for failing to call three alibi witnesses: the mother of Manley's children, his brother and his brother's girlfriend. All of them were interviewed by trial counsel and were available at trial. They were each willing to testify that Manley was at a party with them at the time of the crimes. The decision by counsel to not call these witnesses is presumptively a matter of trial strategy and, as such, is virtually

2

unchallengeable.  Leisure v. State, 828 S.W.2d 872, 875 (Mo. banc 1992).  Manley has not overcome that presumption in any way, especially given trial counsel's reasonable explanation for his decision at the evidentiary hearing.

Trial counsel explained that if the witnesses testified that Manley was with them at a party, but Manley did not testify as to the same alibi, then the jury may have drawn a negative inference.  If, on the other hand, Manley did also testify to the alibi, then he would have been subject to impeachment on cross-examination because he gave the police a statement when he was arrested in which he said nothing about an alibi.  Rather than create this catch-22, counsel chose not to present the alibi defense at all.  Moreover, counsel did not believe this alibi defense—presented by Manley's family and friends—was a good strategy in this case:

> The saying we always tell people in jail is that if mama/friend alibis worked the jails would be empty.  The jury tends to discount those alibis because of the familial or friendship relationships.

In any case, at the close of the State's evidence, trial counsel felt the defense was in pretty good shape and did not want to "put on the alibi to potentially mess anything up":

> And the problem with alibis is that if you put them on and there's even a scent to the jury that the alibis are not—they're not good strong alibis, then the jury in my opinion shifts the burden to the defense to prove that he's innocent.  You'd like to think that juries wouldn't do that, but they do that.  . . . [I]f you put forth alibi evidence the jury has a tendency to look at it and say who do we believe, which side do we believe more, the alibi witnesses or the state's witnesses, and if you lose that toss-up match, then you end up losing the trial.

The motion court found and concluded that trial counsel provided a reasonable trial strategy for his decision not to call these witnesses, and therefore Manley was entitled to no relief.  This conclusion is not clearly erroneous.  See Haidul v. State, 425 S.W.3d 148, 150-151 (Mo. App. E.D. 2014) (strong presumption plus counsel's explanation showed performance was

not deficient); see also Payne v. State, 21 S.W.3d 843, 845-846 (Mo. App. E.D. 1999) (informed and rational decision to not put on alibi witness was not deficient performance).

Point I is denied.

In his second point, Manley claims that trial counsel was ineffective for failing to object and request a mistrial when the trial court temporarily closed the courtroom during the testimony of a co-defendant called on behalf of the State. He claims that had counsel argued that the closure violated his constitutional right to a public trial, the objection or request for mistrial would have been granted.[1]

The co-defendant agreed to testify against Manley in exchange for a reduction in his charge from first-degree to second-degree murder, thus a ten-year sentence instead of a life sentence. Just before the co-defendant took the witness stand at trial, the trial judge told counsel (outside the hearing of the jury) that she had "concerns about the witness and his testimony" and therefore the courtroom would be cleared "on both sides"—meaning everyone in the gallery would be told to leave, not just Manley's friends and family. Trial counsel objected based on the increased amount of security personnel during the trial so far, which he said painted a picture for the jury that Manley's family and friends were "gangbanging thugs." He also stated that he was glad the court was going to clear the entire room, instead of just Manley's associates, but that he still had concerns about the impression this left on the jury. At the evidentiary hearing on

---

[1] This right is derived from the Sixth Amendment to the United States Constitution ("the accused shall enjoy the right to a speedy and public trial") and Article I, Section 18(a) of the Missouri Constitution ("the accused shall have the right to . . . a speedy public trial by an impartial jury"). We need not distinguish between these provisions in our analysis because of their similarity. See State v. Salazar, 414 S.W.3d 606, 622 (Mo. App. S.D. 2013). Manley also attempts to assert this right under the First Amendment to the United States Constitution, which extends this right to the public and the press. See Press-Enterprise Company v. Superior Court of California, 464 U.S. 501, 509 n. 8 (1984). But it is not clear that Manley, or any other defendant, is entitled to assert the public's or the press's rights under the First Amendment in addition to his own right under the Sixth Amendment. See State v. Williams, 328 S.W.3d 366, 371 (Mo. App. W.D. 2010) (noting United States Supreme Court has not yet reached issue). In any event, we need not decide the issue because there has been no violation of the right to a public trial in this case. See id.

Manley's post-conviction motion, trial counsel said he did not have a firm idea of the law regarding the right to a public trial, but knew that it existed and objected on the grounds that closure would be prejudicial to Manley. He also explained that he did not ask for a mistrial because he believed the case was going well for the defense at that point.

The same judge that conducted the trial presided over the post-conviction proceedings. In her findings of fact, the judge indicated that she ordered the courtroom cleared "because of conduct observed by the Court of persons in the gallery prior to [co-defendant's] testimony that appeared to be intended to intimidate witnesses." She "had information about gang signs and threatening gestures being made by people in the gallery." The judge admitted that the record made at the trial was "perhaps" not as complete as it could have been, but indicated that she had real security concerns during the trial, including specific concerns about threats and intimidation as to this particular witness. The judge noted that she had specific recollections of her concerns. She concluded that trial counsel was not ineffective for objecting in the way he did to the closing, that the temporary closing was warranted and that the outcome of the trial would not have been different had the courtroom not been temporarily closed.

We find no clear error in the motion court's findings and conclusions. First, the closure was proper. The right to a public trial was created for the benefit of the defendant because openness in criminal proceedings encourages witnesses to come forward, discourages perjury and ensures that the judge and prosecutor carry out their duties responsibly. Waller v. Georgia, 467 U.S. 39, 45 (1984). But a defendant's right to a public trial is not without limitation. Id.; see also Williams, 328 S.W.3d at 370. The presumption favoring openness may be overcome by an overriding interest, as long as the closure is based on findings that any limitations placed on the right to public trial were essential to avoid prejudice to that interest. Williams, 328 S.W.3d at

5

370. Thus, it must be evident from the record that the court engaged in the following four-part inquiry: (1) there must be an articulated overriding interest that is likely to be prejudiced without closure, (2) the closure must be no broader than necessary to protect that interest, (3) the court must consider reasonable alternatives to closure and (4) the court must make findings adequate to support the closure. Id.; see also Waller, 467 U.S. at 48.

Here, the judge observed people in the gallery making gang signs and threatening gestures intended to intimidate the witness. The prevention of witness intimidation is a sufficient interest worthy of protection. See Presley v. Georgia, 558 U.S. 209, 215-16 (2010) (there are "no doubt circumstances" where "safety concerns" warrant closure); see also, e.g., United States v. Laureano-Perez, 797 F.3d 45, 77-78 (1st Cir. 2015) (defendant's family members, who were making faces and mouthing words of disapproval at witness, were properly excluded from courtroom). The closure in this case was no broader than necessary to protect that particular interest because it was limited to only the time that Manley's co-defendant was testifying. Moreover, by excluding everyone—not just Manley's associates—the court tailored the closing in a balanced way that addressed both the need to protect that witness and the need to limit prejudice to Manley. In this way, the court at least implicitly considered and rejected a narrower alternative for good reason. See Laureano-Perez, 797 F.3d at 78 (implicit consideration of alternatives sufficient). Finally, though the court admitted the findings at trial could have been more specific, the record as a whole is sufficient for us to review the basis of the court's closure. See id.; see also Presley, 558 U.S. at 215-16 (particular interest to be protected by closure must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered").

Second, because temporarily closing the courtroom in this case comported with Manley's constitutional right to a public trial, counsel cannot be found ineffective for failing to object to it on that ground. Thus, we find no clear error in the motion court's conclusion that counsel properly objected based on his concern for the prejudicial impact the increased security in the courtroom may have had on Manley—a concern at least partially alleviated by the removal of the entire gallery audience instead of singling out Manley's associates. There is also no clear error in the conclusion that it was reasonable trial strategy for counsel not to seek a mistrial at this time, both because closure was proper and because counsel articulated that he would not have asked for a mistrial anyway given that he believed the case was going well for the defense. Finally, having failed to demonstrate that counsel's performance was deficient under the first prong of the Strickland analysis, we need not reach the prejudice prong.[2]

Point II is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

---

[2] Manley claims he does not need to prove prejudice in this case because the denial of a right to a public trial is a structural error for which prejudice is presumed. There being no error in the first place, there is no basis for finding prejudice under a Strickland analysis or for presuming prejudice under a structural error analysis. See Everage v. State, 229 S.W.3d 99, 102 (Mo. App. W.D. 2007).