

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| JASON L. HUGHLEY, | ) | No. ED111803 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1722-CC11012 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Paula P. Bryant |
| | ) | |
| Respondent. | ) | Filed: August 13, 2024 |

## Introduction

Jason L. Hughley ("Movant") appeals the motion court's judgment denying his amended Rule 29.15 motion for post-conviction relief following an evidentiary hearing.[1] He argues the motion court clearly erred in denying his amended motion because trial counsel was ineffective for advising Movant not to take the witness stand in his own defense at trial, failing to assert at trial that Movant was present in the car occupied by the shooter at the time of the shooting, and failing to present evidence that Movant never attended the "Brothers to Brothers" youth program, from which a witness identified Movant. We affirm the judgment of the motion court.

## Background

### *Facts*

---

[1] All Rule references are to the Missouri Supreme Court Rules (2017), unless otherwise indicated.

The State charged Movant with murder in the first degree, unlawful use of a weapon, and two counts of armed criminal action stemming from the shooting death of S.S. ("Victim") on June 10, 2007.[2] In January 2015, the trial court dismissed the count of unlawful use of a weapon and two counts of armed criminal action because the statute of limitations had expired. The case proceeded to trial on the one count of murder in the first degree.

The evidence, viewed in the light most favorable to the verdict, demonstrated:

Two gangs, the 387 Bloods and 3940 Crips were feuding. Movant and W.W. were members of the 3940 Crips. A.J. was a member of the rival 387 Bloods. M.A., A.J.'s childhood friend, was not involved in a gang, but M.A.'s brother and nephew were in the 387 Bloods with A.J. As part of the larger gang feud, Movant and A.J. were also feuding.

M.A. testified at trial that, because of the feud, M.A. had to pay attention to the cars in the neighborhood for his own safety. On June 10, 2007, M.A. saw a green four-door car driving around the neighborhood. M.A. saw that W.W. was driving the car and Movant and T.M. were occupants. M.A. was on the porch of a home with Victim and others. A.J. and M.A.'s brother were standing on a street corner in front of the house. Approximately ten minutes before the shooting, M.A. saw the green four-door car pass by the porch and the street corner.

At approximately 10:30 p.m., the same green car drove by the house and slowed down, and M.A. heard what sounded like firecrackers going off. Victim fell and died after being shot in the chest. The shots appeared to come from the back passenger seat of the car, where M.A. saw Movant sitting when the car passed earlier. M.A. indicated he knew Movant since they had been in a youth program together. The program, which M.A. described as "like a Brothers to Brothers" program,

---

[2] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

would have the participants working on Saturdays and making money by cutting grass. M.A. also knew Movant from around the neighborhood.

W.W. testified at trial that, a few days before the shooting, W.W. and Movant were in the green four-door car and A.J. shot at them. On the night of the shooting, Movant asked W.W. to pick him up. W.W. drove the car with Movant and T.M. in the car. As they passed by where M.A. and the others were, W.W. heard a shot out of the car, and saw Movant out the window. W.W. then saw Movant coming back into the car with a gun. W.W. initially did not talk to police because he was afraid of retribution. In May 2013, police detectives questioned W.W. and he told them everything that happened.

After the State's case-in-chief, Movant's trial counsel announced that Movant had informed him that he would not testify at trial. The trial jury ultimately found Movant guilty of murder in the second degree. The trial court sentenced Movant to thirty years in prison.

*Procedural History*

Movant directly appealed his conviction to this Court, and this Court affirmed his conviction by *per curiam* order. *State v. Hughley*, 516 S.W.3d 931 (Mo. App. E.D. 2017).

Movant thereafter timely filed his Rule 29.15 motion for post-conviction relief. The public defender was appointed to represent Movant and promptly requested a 30-day extension of time to file an amended motion. The motion court did not grant the 30-day extension until November 9, 2017, after the amended motion was due to be filed. The amended motion was untimely filed on December 7, 2017. At the evidentiary hearing, the motion court found that Movant had been abandoned and accepted the amended motion as timely filed.

The motion court held an evidentiary hearing on September 23, 2022. At the hearing, Movant's trial counsel and Movant testified. Trial counsel testified that he and Movant met

multiple times before trial to discuss defense strategy. Movant's defense would be that he was not present in the car when the shooting occurred. Movant had made two statements to police in which he denied being in the car when the shooting occurred. Further, Movant had never told trial counsel that he was in the car at the time of the shooting.

Trial counsel also planned to attack the inconsistencies in the testimony of M.A. and W.W. and to challenge M.A.'s identification of Movant as the shooter because of his distance from the shooting and because it was dark outside. Finally, trial counsel testified he was aware that M.A. did not participate in the "Brothers to Brothers" program, but he did participate in a youth program, and there was no dispute that M.A. knew Movant from the neighborhood. Movant himself testified that he did not know M.A., but M.A. likely knew who he was from the neighborhood.

Trial counsel also testified he advised Movant about his right to testify. Trial counsel told Movant there were "pros and cons of testifying versus not testifying." He informed Movant that his prior convictions could be used to attack his credibility. Trial counsel also told Movant it was ultimately his choice whether to testify but, given their planned defense and Movant's prior convictions, it would be in his best interest not to testify. Movant alleged that he wanted to testify and that he would have testified he was in the car but he did not shoot Victim. Trial counsel countered that this trial strategy and Movant's proposed testimony would have been inconsistent with Movant's prior statements to police and could have exposed Movant to accomplice liability.

After the evidentiary hearing, the motion court issued findings of fact and conclusions of law denying Movant's amended Rule 29.15 motion. The motion court found, first, that Movant made the decision not to testify and trial counsel's advising Movant not to testify was reasonable trial advice. Second, the motion court concluded that Movant's defense that he was not in the green four-door car was reasonable trial strategy. Finally, the motion court concluded that trial counsel's

failure to impeach M.A. regarding his testimony about the "Brothers to Brothers" youth program did not prejudice Movant. The motion court reasoned that M.A. knew Movant for years and "the fact that they did not attend this program together would not have impeached his identification of Movant."

Movant now appeals.

## Standard of Review

Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Manley v. State*, 488 S.W.3d 145, 146 (Mo. App. E.D. 2016). The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Manley*, 488 S.W.3d at 146-47.

To establish ineffective assistance of counsel, a movant must show by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation; and (2) movant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Manley*, 488 S.W.3d at 147. To satisfy the performance prong, a movant "must overcome a strong presumption that counsel's conduct was reasonable" by pointing to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Manley*, 488 S.W.3d at 147. To satisfy the prejudice prong, a movant must show a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Id.* If the movant fails to satisfy either the performance prong or the prejudice prong of the *Strickland* test, his claim fails, and we need not address the other prong. *Id.*

"Defense counsel has wide discretion in determining what strategy to use in defending his or her client." *Worthington v. State*, 166 S.W.3d 566, 578 (Mo. banc 2005). "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). "Reasonable choices of trial strategy, no matter how ill[-]fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Worthington*, 166 S.W.3d at 573 (quoting *Cole v. State*, 152 S.W.3d 267, 270 (Mo. banc 2004)).

**Discussion**

*Point I*

In his first point, Movant argues the trial court clearly erred in that counsel was ineffective for advising him not to take the witness stand in his own defense at trial. Movant further argues his testimony would have demonstrated he was present in the car, but was neither the shooter nor involved in the shooting.

"The criminal defendant's decision to exercise the right to testify is personal to the defendant." *Hurst v. State*, 301 S.W.3d 112, 118 (Mo. App. E.D. 2010) (quoting *Howard v. State*, 59 S.W.3d 586, 588-89 (Mo. App. E.D. 2001)). "Although the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice." *Hurst*, 301 S.W.3d at 118. "A trial counsel's advice not to testify is not deemed ineffective assistance of counsel if it might be considered trial strategy." *Id.* Advising Movant not to testify because of prior convictions may be a matter of trial strategy. *Haslip v. State*, 717 S.W.2d 533, 538 (Mo. App. S.D. 1986). In any event, Movant must allege what his testimony would have been and "show that there was a reasonable probability that his testimony would have caused the jury to acquit him." *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993).

6

Trial counsel's advice that Movant not testify was a matter of reasonable trial strategy. Movant's trial counsel expressed concern that, if Movant testified, his prior convictions would come into evidence and negatively impact Movant's credibility. Considering that Movant's main defense at trial was to challenge the credibility of the State's witnesses, trial counsel wanted to avoid an assessment by the jury of Movant's credibility based on his prior convictions.

Additionally, trial counsel testified he could "get out every argument [he] needed to make in the case without having [Movant] testify." Movant's trial defense was that he was not involved in the shooting and was not present at the scene. Movant's prior statements to police were that he was not in the car when the shooting occurred. Trial counsel's assessment was that Movant's proposed testimony placing himself in the car when the shooting occurred would have contradicted his prior statements, damaged Movant's credibility, and potentially exposed him to accomplice liability.

Trial counsel's advice in this regard is easily within the realm of reasonable trial strategy and therefore cannot be deemed ineffective assistance of counsel. *Worthington*, 166 S.W.3d at 573; *Haslip*, 717 S.W.2d at 538.

For similar reasons, Movant fails to establish prejudice in that he has not demonstrated a reasonable probability that his proposed testimony would have led to his acquittal. *Sparks*, 856 S.W.2d at 336. Trial counsel reasonably believed Movant's proposed testimony would have incriminated Movant and, even taken at face value, could have exposed him to accomplice liability. Even Movant acknowledged at the evidentiary hearing that, had he admitted he was in the car at the time of the shooting, he could have incriminated himself. In sum, Movant cannot show prejudice because the reasonable probability is not that his proposed testimony would have led to his acquittal, but that it would have strengthened the State's case against him.

7

Because trial counsel's advice amounted to reasonable trial strategy and Movant cannot establish prejudice, the motion court did not clearly err in denying Movant's claim that counsel was ineffective for advising Movant not to testify.

Point I is denied.

*Point II*

In his second point, Movant similarly argues the trial court clearly erred in that counsel was ineffective for failing to assert at trial that Movant was present in the car at the time of the shooting, but was neither the shooter nor involved in the shooting.

As explained in Point I, Movant's trial counsel pursued a reasonable trial strategy that Movant was not in the car. "Choosing one reasonable trial strategy over another is not ineffective assistance of counsel." *King v. State*, 505 S.W.3d 419, 424 (Mo. App. E.D. 2016). Further, "strategic choices made by trial counsel after a thorough investigation of the law and facts applicable to the case are virtually unchallengeable." *Id.* The motion court found this was a reasonable trial strategy and counsel was not ineffective for failing to present Movant's proposed defense. We see no reason to conclude that the motion court clearly erred.

Point II is denied.

*Point III*

In his third point, Movant argues the trial court clearly erred in that counsel was ineffective for failing to present evidence that Movant never attended the "Brothers to Brothers" youth program as alleged by State's witness M.A. Movant further argues trial counsel should have impeached M.A.'s testimony regarding the "Brothers to Brothers" youth program and such impeachment would have provided Movant a viable defense.

8

"The decision whether to impeach a witness is presumed to be a matter of trial strategy." *Marshall v. State*, 567 S.W.3d 283, 296 (Mo. App. E.D. 2019). "In an ineffective assistance of counsel claim, a movant can overcome this presumption by demonstrating that the decision was not a matter of reasonable trial strategy and such action would have provided a viable defense or changed the outcome of the trial." *Id.*

The evidence at trial demonstrated that M.A. and Movant knew each other from around the neighborhood. Therefore, Movant's proposed impeachment that M.A. did not know Movant from the "Brothers to Brothers" youth program would not have provided Movant a viable defense. During the evidentiary hearing, Movant himself acknowledged that M.A. likely knew him from the neighborhood. Further, Movant's trial counsel corroborated that M.A. knew Movant from the neighborhood and that M.A. and Movant had hung out with each other.

In sum, Movant has not overcome the presumption that trial counsel pursued a reasonable trial strategy and fails to demonstrate that the proposed impeachment of M.A. would have provided a viable defense. Thus, the trial court did not clearly err in concluding that trial counsel was not ineffective for failing to impeach M.A.

Point III is denied.

## Conclusion

We affirm the judgment of the motion court.

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quiqless, J., concur.

9